[No. 52548-4-I. Division One. October 25, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES LEROY HARRIS, *Appellant*.

908

*Elaine L. Winters* (of *Washington Appellate Project*), for appellant.

*Janice E. Ellis, Prosecuting Attorney*, for respondent.

AGID, J. — After convicting Charles Harris of first degree child molestation on stipulated facts, the superior court sua sponte imposed an exceptional sentence above the standard range based on findings it made at sentencing. Harris appealed.

While his appeal was pending, the United States Supreme Court held in *Blakely v. Washington*[1] that facts used to impose a sentence longer than that supported by the verdict alone must be proved to a jury beyond a reasonable doubt. The parties in this case then filed supplemental briefs addressing the following principal issues: (1) does *Blakely* render the exceptional sentence provisions of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, invalid on their face; if not, (2) does the trial court's failure to submit aggravating factors to a jury require reversal even though Harris was tried on stipulated facts; (3) does the superior court have authority to empanel a sentencing jury on remand; and (4) is a jury determination of aggravating factors in this case barred by principles of double jeopardy, consolidation, or separation of powers?

We conclude that the exceptional sentence statutes are not facially invalid. But because Harris' stipulation at trial did not admit the facts the court relied on to support the exceptional sentence, we reverse the sentence. We also hold that the superior court on remand has authority to empanel a jury to consider aggravating factors.

## FACTS

Based on allegations that Harris had sexual contact with his seven-year-old stepdaughter, the State charged him with one count of first degree child molestation. In exchange for the State's promise to file no additional counts, Harris agreed to a trial on stipulated facts contained in the police reports. He expressly waived his right to a jury trial and agreed that the court could consider the affidavit of probable cause "for imposing a standard range sentence." The State agreed to recommend a sentence at the bottom of the standard range. Harris acknowledged in open court that the court was not bound by any sentence recommendations and could impose an exceptional sentence if it found sufficient grounds to do so.

---

[1] 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

The court found Harris guilty as charged and proceeded to sentencing. The parties recommended 67 months' confinement, a sentence at the bottom of the standard range. Harris' community corrections officer (CCO), Judith Bronson, recommended 89 months, the top of the range. The trial court indicated it was considering an exceptional sentence based on allegations in the CCO's report, noting that the report contained more than just the facts of the offense. The court asked if Harris had read the report and if the defense disputed any of the additional information. When counsel indicated that Harris had not read the report, the court continued the hearing.

The defense then filed a brief contesting a number of the allegations in the report. When the sentencing hearing resumed, the court stated that it was considering several aggravating circumstances not addressed in the defendant's brief; i.e., that the victim was particularly vulnerable due to extreme youth, the defendant abused a position of trust, and there were multiple incidents of abuse. The court identified the portions of the report it would rely on for those factors. Defense counsel did not dispute the material facts but instead argued what he referred to as "mitigating circumstances." He asserted that the multiple incidents factor should not apply because the four or five incidents in this case were fewer than the number typically seen in child molestation cases. Counsel also argued that while Harris did abuse a position of trust, he did not always do so.

Citing the three aggravating factors it had mentioned earlier in the hearing, the court imposed an exceptional sentence of 120 months, stating that any one of the factors would be sufficient to support its sentence.

## DECISION

## I

■ For the first time on appeal, Harris contends the judge should have recused herself at sentencing because,

prior to imposing sentence, she read an inadmissible sexual deviancy evaluation. Although he concedes that the judge said she relied exclusively on other evidence, he argues that given the inflammatory nature of the evaluation, the judge still should have recused herself. He contends her failure to do so violates the appearance of fairness doctrine. The State responds that this issue does not involve a manifest constitutional error and therefore cannot be raised for the first time on appeal.[2] We agree with the State.

■■■■ An appearance of fairness claim requires proof of actual or potential bias.[3] Mere speculation is not enough.[4] Furthermore, we presume a judge performs his or her duties without prejudice[5] and disregards inadmissible evidence.[6] Here, there is no evidence of actual or potential bias. After Harris and the State agreed that the evaluation was not admissible, the judge made it clear that she was considering only the other information in the presentence report. Harris concedes there is no "direct" indication in the record that the judge relied on the inadmissible information in imposing his sentence. He has failed to demonstrate manifest constitutional error.

II

■■ Harris argues that the court's reasons for imposing an exceptional sentence are neither legally adequate nor supported by the record. But because the court stated that any one of the factors would be sufficient to support the

---

[2] An error may be raised for the first time on appeal if it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). To establish manifest constitutional error, an appellant must "show how, in the context of the trial, the alleged error actually affected [his] rights." *McFarland*, 127 Wn.2d at 333.

[3] *State v. Dugan*, 96 Wn. App. 346, 354, 979 P.2d 885 (1999).

[4] *In re Pers. Restraint of Haynes*, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000).

[5] *Jones v. Halvorson-Berg*, 69 Wn. App. 117, 127, 847 P.2d 945, *review denied*, 122 Wn.2d 1019 (1993).

[6] *State v. Melton*, 63 Wn. App. 63, 68, 817 P.2d 413 (1991), *review denied*, 118 Wn.2d 1016 (1992).

sentence, and because there is at least one valid aggravating factor, Harris' argument fails.[7]

■ The court found that Harris abused a position of trust. He contends he was not in a position of trust because the victim's mother knew he had a prior indecent liberties conviction involving a stepdaughter. Because she knew he was not an appropriate supervisor for the victim, he reasons, he was not in a position of trust. This argument is specious. That she knew about Harris' past is not relevant to whether the mother and the victim expected he would act appropriately with his stepdaughter. As a stepfather living in the stepdaughter/victim's home, Harris was plainly in a position of trust.[8] He abused that trust when he molested the victim in her own home. This factor is valid and supported by the record.

■ The trial court also relied on multiple incidents of abuse over a prolonged period of time.[9] It found that there were "at least 4 events over six months." Noting that the applicable statute refers to a "pattern" of abuse over "a prolonged period of time,"[10] Harris argues that four incidents in six months does not establish a "pattern." But our courts have upheld exceptional sentences based on this aggravating factor in cases with similar facts.[11] The trial court's finding that there was a pattern of abuse was not clearly erroneous.

---

[7] *State v. Osalde*, 109 Wn. App. 94, 97, 34 P.3d 258 (2001) (where sentencing court states that any of its reasons would support the exceptional sentence, reviewing court need only find one valid reason supporting the sentence).

[8] *See State v. Harp*, 43 Wn. App. 340, 717 P.2d 282 (1986); *State v. Fisher*, 108 Wn.2d 419, 427, 739 P.2d 683 (1987); *State v. Shephard*, 53 Wn. App. 194, 199, 766 P.2d 467 (1988).

[9] Harris' suggestion that the legislature took the likelihood of multiple incidents into account in setting the punishment for child molestation is baseless. *Cf. State v. Overvold*, 64 Wn. App. 440, 449, 825 P.2d 729 (1992) ("There is no basis for concluding that the legislature contemplated multiple incidents and a continued pattern of abuse in establishing the penalty for one count of indecent liberties.").

[10] RCW 9.94A.535(2)(g).

[11] *See State v. Atkinson*, 113 Wn. App. 661, 671-72, 54 P.3d 702 (2002) (at least three incidents of domestic violence over a 7-to-10 month period supported finding of ongoing pattern of abuse), *review denied*, 149 Wn.2d 1013 (2003).

Harris' exceptional sentence is based on valid aggravating factors that are supported by the record.

## III

 Harris next contends his exceptional sentence must be vacated because *Blakely* renders the exceptional sentence provisions of the SRA invalid and inoperable. Because RCW 9.94A.535 provides that a judge, not a jury, will find aggravating factors supporting an exceptional sentence, and RCW 9.94A.530(2) allows the court to make that determination by a preponderance of the evidence, Harris concludes those statutes are facially invalid under *Blakely*.[12]

But *Blakely* did not declare our exceptional sentencing scheme facially invalid. The majority expressly stated that it was not declaring determinate sentencing unconstitutional.[13] And it did not say that an exceptional sentence could never be imposed under our statutes. Rather, it concluded that our statutory procedures for imposing such a sentence based on judicial fact finding were invalid because they violated the Sixth Amendment right to a jury trial.[14] Nothing in *Blakely* supports Harris' conclusion that the exceptional sentence statutes at issue in this case are facially invalid.[15]

---

[12] In the interest of completeness, we address this issue even though, as we discuss in section V below, we conclude the trial courts have authority to cure the procedural deficiencies enunciated in *Blakely*.

[13] *Blakely*, 124 S. Ct. at 2540 ("we are not . . . 'find[ing] determinate sentencing schemes unconstitutional[ ]' [and t]his case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment" (citation omitted)).

[14] *Id.*

[15] *See United States v. Ameline*, 376 F.3d 967, 982-83 (9th Cir. 2004) (noting that "*Blakely* seems to contemplate that its holding can apply to determinate sentencing schemes without wholesale invalidation. . . . *Blakely* did not rule that Washington's Sentencing Reform Act was unconstitutional on its face, rather only that the aspects of the statute which required a judge to find facts by a preponderance of the evidence that increased the level of punishment beyond the standard range were in violation of the Sixth Amendment.").

Nor does application of the test for facial invalidity lead to that conclusion. Statutes are presumed to be constitutional.[16] To establish that the statutory provisions challenged in this case are invalid on their face, Harris must show that there is no conceivable application of the statutes that would be constitutional.[17] *Blakely* expressly holds that a defendant's stipulation to facts supporting an exceptional sentence is a constitutional method of imposing an exceptional sentence.[18] RCW 9.94A.530(2) provides for that same method of proving facts to support an exceptional sentence. In addition, exceptional sentences below the standard range and upward departures based on prior convictions, which are excepted from *Blakely*'s holding,[19] can still be lawfully imposed post-*Blakely*. And a finding of sexual motivation beyond a reasonable doubt by a jury[20] is permitted under *Blakely*. Therefore, we reject Harris' facial challenge.[21]

---

[16] *Island County v. State*, 135 Wn.2d 141, 146, 955 P.2d 377 (1998).

[17] *Tunstall v. Bergeson*, 141 Wn.2d 201, 221, 5 P.3d 691 (2000), *cert. denied*, 532 U.S. 920 (2001).

[18] *Blakely*, 124 S. Ct. at 2541; *see United States v. Chaparro*, CRIM EP-92-CR-283 KC, 2004 U.S. Dist. LEXIS 17531, 2004 WL 1946454, at 11 (W.D. Tex. Sept. 1, 2004) (*"Blakely* makes clear that sentencing guidelines are not defective when an increase in sentence beyond the base offense level is premised or[] a defendant's stipulations or judicial admissions. *Blakely* further may not be read as precluding judicial fact-finding incident to the application of a downward adjustment, or precluding upward adjustments should a defendant consent to judicial fact-finding. As such, the guidelines would not be unconstitutional on their face under the Sixth Amendment." (citations omitted)).

[19] *Blakely*, 124 S. Ct. at 2536 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

[20] RCW 9.94A.835.

[21] A case Harris cites—*State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001)—is easily distinguished. *Gould* held that a Kansas statute authorizing upward departure sentences was "unconstitutional on its face" under *Apprendi*. *Gould*, 23 P.3d at 814. But the court provided no supporting analysis and said nothing about severability, the presence or absence of a severability clause, or the inherent powers of the court. Nor did the court consider anything comparable to the stringent test for facial invalidity that is applied in Washington. *See City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004). Finally, *Gould* was decided solely on the basis of *Apprendi*, long before *Blakely*. The *Blakely* analysis of Washington's exceptional sentence provisions, which suggests they are not unconstitutional on their face, provides more relevant guidance than *Gould*.

We also recognize that even if a statute survives this facial test, it may still be inoperable if it contains valid and invalid provisions that are not severable.[22] We conclude that the invalid provisions at issue in this case are severable.

██ ██ Where a statute is partially invalid, the invalid provisions may be severed if the remaining provisions will still accomplish the statute's purpose and further the legislature's intent.[23] There is a presumption of severability, and courts determining severability " 'should refrain from invalidating more of the statute than is necessary' "[24] so as not to frustrate the intent of the legislature.[25] When a statutory scheme contains a severability clause, courts "generally attempt to give effect to the clause as an indication the legislature would have passed the remainder of the statute without the invalid portion."[26]

██ Applying these principles to our exceptional sentence statutes, we conclude that the invalid procedures in those statutes are severable for three reasons. First, the statute has a severability clause,[27] thus indicating the legislature's intent to sever any invalid provisions. Second, it is clear that the legislature's focus in enacting the exceptional sentence provisions of the SRA was not on the procedures invalidated by *Blakely*. Rather, it was on the

---

[22] *See generally* 2 NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION ch. 44 (6th ed. 2001); *Marchioro v. Chaney*, 90 Wn.2d 298, 302, 582 P.2d 487 (1978).

[23] *State v. Williams*, 144 Wn.2d 197, 212-13, 26 P.3d 890 (2001).

[24] *Ameline*, 376 F.3d at 981 (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652-53, 104 S. Ct. 3262, 82 L. Ed. 2d 487 (1984)).

[25] *Id.*

[26] *Mt. Hood Beverage Co. v. Constellation Brands, Inc.*, 149 Wn.2d 98, 118, 63 P.3d 779 (2003).

[27] The SRA's severability clause is codified in RCW 9.94A.910 ("If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected.").

exceptional sentence scheme and the goals underlying it.[28] There is no indication that the procedures incorporated in the statutes were a matter of any legislative significance. Third, as discussed below, the courts have inherent power to supply constitutionally valid procedures.[29] Severance of the invalid procedures, therefore, does not undermine the legislature's goals or contradict its intent. On this point, we agree with the Ninth Circuit's severance analysis in the context of the federal sentencing guidelines:

> The Sentencing Guidelines will still promote this goal even if the requirements for judge fact finding by a preponderance of the evidence are severed as violating the Sixth Amendment in circumstances like those confronting Ameline. The Sentencing Guidelines seek to achieve these Congressional objectives because they contemplate similar sentences once a given set of facts are found to exist. Although severance would change how those facts are determined, and by whom, severance would have no effect on the Congressional goal of achieving consistency of sentences in cases that involve similar offense conduct. . . .[30]

---

[28] *See* RCW 9.94A.010:

The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) Offer the offender an opportunity to improve him or herself;

(6) Make frugal use of the state's and local governments' resources; and

(7) Reduce the risk of reoffending by offenders in the community.

[29] Even if our courts lacked inherent power to supply constitutional procedures in this instance, the exceptional sentence provisions of the statute would still substantially achieve their purpose because, as explained above, exceptional sentences below the standard range, and upward departures based on criminal history, admissions, or a jury finding of sexual motivation could still be validly imposed in the absence of the invalid procedures.

[30] *United States v. Ameline*, 376 F.3d at 981-82.

This reasoning applies equally to our exceptional sentence statutes, which share many of the same goals expressed in the federal sentencing guidelines.[31] For these reasons, we conclude that the procedures invalidated by *Blakely* are severable from the remainder of the exceptional sentence provisions.

## IV

Harris next argues that *Blakely* requires us to reverse his exceptional sentence because the facts supporting it were found by the court, not a jury. The State contends Harris' sentence falls within an exception in *Blakely* that applies when a defendant stipulates to facts or consents to judicial fact finding. The State asserts that Harris consented to judicial fact finding *and* stipulated to the aggravating facts. The State misreads *Blakely* and the record in this case.

In the portion of *Blakely* the State relies on, the majority responded to the dissent's concerns that its holding would preclude defendants from arguing sentencing factors to a judge, stating:

> But nothing prevents a defendant from waiving his *Apprendi*[32] rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements . . . .[33]

Based on this language, the State argues that Harris waived his right to a jury determination of aggravating factors when he consented to a bench trial. To be valid,

---

[31] The purposes of the SRA include parity among defendants and proportionality of the punishment and crime. RCW 9.94A.010(1), (3).

[32] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[33] *Blakely*, 124 S. Ct. at 2541 (citations omitted).

however, a waiver must be a voluntary relinquishment of a *known* right.[34] Thus, Harris' consent to judicial fact finding was a valid waiver only if the right to have a jury determine sentencing facts existed at the time of his consent. It did not.

While *Apprendi* predates Harris' consent, *Apprendi*'s principles were not extended to finding facts to support exceptional sentences until *Blakely*, which postdates Harris' consent. More importantly, at the time Harris consented to judicial fact finding, the state Supreme Court had expressly declared in *State v. Gore* that *Apprendi* jury rights *did not* extend to facts supporting exceptional sentences.[35] Because Harris' trial occurred prior to *Blakely* and at a time when Washington law explicitly rejected the right to a jury determination of facts supporting an exceptional sentence, *Blakely*'s consent exception cannot apply to Harris. He could not waive a right the *Gore* court held he did not have.

It could be argued that the same rationale defeats the State's argument that Harris stipulated to facts supporting his exceptional sentence when he agreed to a stipulated facts trial. We need not decide that question here, however, because the record does not support the State's argument.

■ In the written stipulation agreement, Harris agreed that the court could rely on the police reports and other documents "at this bench trial," and could use the affidavits of probable cause "for imposing a standard range sentence." Because these stipulations were for purposes other than an exceptional sentence, they do not come within the *Blakely* exception. In addition, as Harris points out, a stipulated facts trial is merely an agreement that the stipulated evidence is what the witnesses would testify to if called at

---

[34] *State v. Vy Thang*, 145 Wn.2d 630, 648, 41 P.3d 1159 (2002). In addition, courts must indulge every reasonable presumption against a waiver of constitutional rights. *State v. Riley*, 19 Wn. App. 289, 294, 576 P.2d 1311 (citing *Barker v. Wingo*, 407 U.S. 514, 525, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)), *review denied*, 90 Wn.2d 1013 (1978).

[35] *State v. Gore*, 143 Wn.2d 288, 315, 21 P.3d 262 (2001).

trial.[36] The trial court still must make factual findings and determine guilt or innocence. The court in this case made no findings following the bench trial that would support aggravating factors. The aggravating factors the court relied on for the exceptional sentence were based on facts found outside the trial record. Harris' trial stipulation cannot be used to support the aggravating factors for this reason as well.

Accordingly, Harris' exceptional sentence violates the Sixth Amendment and must be reversed.[37]

## V

The remaining issues involve the sentencing court's authority on remand. The State contends the court should have the option of convening a sentencing jury on the aggravating factors. Harris disagrees, arguing that in the absence of statutory authority, the sentencing court lacks power to empanel a jury. Post-*Blakely* courts have come to different conclusions on this question.

 In *United States v. Croxford*,[38] the court concluded that convening a sentencing jury for aggravating factors was not authorized by the federal sentencing guidelines and that it was powerless to rewrite them. The court in *Aragon v. Wilkinson*,[39] on the other hand, held that Arizona courts have the inherent power to convene juries after *Blakely*:

> Additionally, although the statutory sentencing scheme does not currently provide for convening a jury trial during the sentencing phase of a non-capital case, nothing in our rules or statutes prohibits the court from doing so. Thus, to assist the court in the exercise of its jurisdiction to sentence Aragon, the

---

[36] *State v. Mierz*, 127 Wn.2d 460, 469, 901 P.2d 286 (1995).

[37] The State has not argued in this case that defense counsel's statements at sentencing amounted to a stipulation under *Blakely* or that the error was harmless.

[38] 324 F. Supp. 2d 1230, *aff'd*, 324 F. Supp. 2d 1255 (D. Utah 2004).

[39] 209 Ariz. App. 61, 97 P.3d 886 (2004).

court may utilize its inherent authority to convene a jury trial on the existence of facts that may support imposition of an aggravated sentence. *See Acker v. CSO Chevira*, 188 Ariz. 252, 254, 934 P.2d 816, 818 (App. 1997) (quoting *State v. Superior Court*, 39 Ariz. 242, 247-48, 5 P.2d 192, 194 (1931) ("A court's inherent authority 'may be defined as such powers as are necessary to the ordinary and efficient exercise of jurisdiction.' ").[40]

After reviewing our own statutes and case law, we conclude that the courts of this state also have inherent authority to empanel juries to consider aggravating factors.

We begin by acknowledging the well-settled principle that courts generally lack authority to rewrite or alter legislative enactments.[41] It is equally well settled, however, that courts have inherent power to supply statutory procedures and to enforce procedural rights. This power is acknowledged in our statutes, court rules, and case law. RCW 2.28.150 states:

> When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, *if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws.*[42]

The Superior Court Criminal Rules echo this statutory authority. CrR 1.1 provides that the criminal procedural rules "supersede all procedural statutes and rules that may be in conflict and shall be interpreted and supplemented in light of the common law and the decisional law of this state." The court rules also specifically provide procedures for implementing the right to a jury. CrR 6.1(a) provides that "[c]ases required to be tried by jury shall be so tried unless the defendant files a written waiver . . . ." CrR 6.16(b) states

---

[40] *Aragon*, 97 P.3d at 891 (some citations omitted).

[41] *State v. Groom*, 133 Wn.2d 679, 689, 947 P.2d 240 (1997).

[42] (Emphasis added.)

that a trial court "may submit to the jury forms for such special findings which may be required or authorized by law." Thus, both statutes and court rules envision situations in which the superior courts will use procedures that are not specifically prescribed by statute.

Washington courts have exercised this inherent authority in a number of cases.[43] The most significant of these is a series of decisions in which the state Supreme Court invoked the inherent power to supplement statutes with constitutionally mandated procedures, including the right to a jury. In *State v. Furth*,[44] the court considered whether defendants in habitual criminal proceedings had a right to a jury determination of facts relating to their habitual criminal status. Although a 1903 version of the habitual criminal statute provided for a jury trial, the legislature had deleted that provision. Nevertheless, after noting that the right to a jury trial " 'shall remain inviolate' "[45] and that the courts "cannot trench on the province of the jury upon questions of fact,"[46] the *Furth* court concluded that "[t]he inclusion in the 1903 habitual criminal statute . . . of a provision for trial was merely declaratory of the [constitutional] right the defendant had" and that the 1909 amendment "did not thereby divest the appellant of his right to trial by jury."[47] The court reversed and remanded for a

---

[43] *See, e.g., State ex rel. McCool v. Small Claims Court of Jefferson County Dist. Ct.*, 12 Wn. App. 799, 532 P.2d 1191, *review denied*, 85 Wn.2d 1008 (1975) (where authorizing statute was silent on procedures, courts had inherent power under RCW 2.28.150 to permit small claims courts to order a new trial, particularly since that procedure would be consistent with the spirit of the authorizing statute); *State v. Kolocotronis*, 34 Wn. App. 613, 620-24, 663 P.2d 1360, *review denied*, 100 Wn.2d 1014 (1983) (where authorizing statute granted petitioners the right to petition the court for final discharge or conditional release but did not set forth a specific procedure for doing so, court held it had inherent power under RCW 2.28.150 to prescribe the procedures to be followed).

[44] 5 Wn.2d 1, 104 P.2d 925 (1940).

[45] *Id.* at 18 (quoting CONST. art. I, § 21).

[46] *Id.* at 19.

[47] *Id.*

retrial.[48] *Furth* demonstrates that courts have the inherent power to supply a jury procedure when it is constitutionally required.[49]

In *In re Harris*,[50] the court concluded that the summons procedures for detaining mentally disordered persons violated due process. Instead of invalidating the statute, the court exercised its "inherent judicial power" and imposed a requirement that courts find "probable dangerousness" before issuing a summons.[51] Similarly, in *In re Personal Restraint of Young*,[52] the court supplemented the statutory procedures for detaining suspected sexually violent predators:

> On several prior occasions, we have supplemented the commitment procedures of RCW 71.05 to bring that statute into compliance with procedural due process guaranties. In addition, we often interpret statutes in a manner which renders them constitutional. Here, too, additional procedures are needed to ensure that the Statute is enforced fairly.[53]

Finally, in *State v. Thorne*,[54] the defendant asked the court to declare the Persistent Offender Accountability Act (the Act), chapter 9.94A RCW, unconstitutional. Citing *Harris* and *Young*, the court declined to do so, stating:

> If a statute does not contain all of the process which is due, this court will impose the requirements necessary to satisfy due process. This court has inherent authority to supplement statutory provisions by requiring additional procedures to satisfy the requirements of procedural due process.[55]

---

[48] *Id.* at 19-20.

[49] *See also Seattle Sch. Dist. No. 1 of King County v. State*, 90 Wn.2d 476, 503 n.7, 585 P.2d 71 (1978) ("The power of the judiciary to enforce rights recognized by the constitution, even in the absence of implementing legislation, is clear.").

[50] 98 Wn.2d 276, 654 P.2d 109 (1982).

[51] *In re Harris*, 98 Wn.2d at 287.

[52] 122 Wn.2d 1, 857 P.2d 989 (1993).

[53] *Young*, 122 Wn.2d at 46 (citations omitted).

[54] 129 Wn.2d 736, 921 P.2d 514 (1996).

[55] *Thorne*, 129 Wn.2d at 769.

Later, in addressing the constitutional sufficiency of the Act's procedures, the court said, "[w]e do not have the right to mandate particular procedures greater than the procedures required by the statute *unless the procedures run afoul of a constitutional requirement.*"[56]

The holdings in these cases, together with RCW 2.28.150 and the Superior Court Criminal Rules, persuade us that our courts have inherent power to supplement the exceptional sentence statutes with the constitutionally-mandated procedures announced in *Blakely*.[57] It is appropriate to exercise that power in these circumstances because doing so fulfills the legislative intent underlying the exceptional sentence provisions of the SRA and because there are no procedural alternatives for cases that require fact finding and do not fall within the criminal history and waiver exceptions to *Blakely*'s jury requirement.[58] Permitting the trial court to empanel a jury under CrR 6.16 to determine the facts upon which the court may base an exceptional sentence is *the only* constitutionally valid procedure for imposing exceptional sentences where the *Blakely* exceptions for criminal history and waiver do not apply.

---

[56] *Thorne*, 129 Wn.2d at 778 (emphasis added).

[57] The state Supreme Court's decisions in *State v. Martin*, 94 Wn.2d 1, 614 P.2d 164 (1980), and *State v. Frampton*, 95 Wn.2d 469, 627 P.2d 922 (1981), are distinguishable. The statutes at issue in those cases provided a death penalty jury for defendants who were convicted by a jury, but provided no such procedure or penalty for defendants who pleaded guilty. Noting that the legislative history suggested the legislature did not intend to provide that procedure and penalty, the supreme court declined to judicially supply them. *Frampton*, 95 Wn.2d at 475-78. Unlike the statutes at issue in *Frampton* and *Martin*, the statutes in this case provide both a penalty and an implementing procedure. There is no doubt here, as there was in *Frampton* and *Martin*, regarding the legislature's intent to provide a procedure. Supplying a constitutional procedure in this case is consistent with and furthers that intent.

[58] Even where a statute does not provide a particular procedure, we cannot invoke our inherent power "if alternative procedures exist that would accomplish the same goal . . . ." *State v. Masangkay*, 121 Wn. App. 904, 914, 91 P.3d 140 (2004).

# VI

Harris argues that empanelling a jury on remand will violate double jeopardy. He contends that because aggravating factors " 'operate as the functional equivalent of an element of a greater offense' "[59] and a jury never considered aggravating factors below, submitting aggravating factors to a jury on remand would amount to trying him for a greater offense. We disagree.

Double jeopardy principles generally do not apply to sentencing.[60] "The pronouncement of sentence simply does not 'have the qualities of constitutional finality that attend an acquittal.' "[61] In any event, although a jury did not pass on the aggravating factors, the court did. The court found the aggravating factors were supported by the evidence and imposed an exceptional sentence. Allowing a jury to do the same on remand does not expose Harris to punishment for a greater offense.[62] Finally, Harris has no legitimate expectation of finality in his sentence because he appealed it.[63]

Harris contends resentencing on the aggravating factors is barred by CrR 4.3.1(b)(3). That rule provides that a defendant who has been tried for an offense and is facing a second trial may move to dismiss a new charge for a "related offense" prior to the second trial. The rule " 'prevents prosecutors from harassing a defendant by bringing

---

[59] *Ring v. Arizona*, 536 U.S. 584, 609, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) (quoting *Apprendi*, 530 U.S. at 494 n.19).

[60] *Monge v. California*, 524 U.S. 721, 724, 728, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998); *see State v. Ring*, 204 Ariz. 534, 65 P.3d 915 (2003).

[61] *Id.* at 729 (quoting *United States v. DiFrancesco*, 449 U.S. 117, 134, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980)).

[62] *Cf. Dobbert v. Florida*, 432 U.S. 282, 298, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977) (even though death penalty procedures were unconstitutional, death penalty could be imposed on remand without violating double jeopardy because defendant was on notice that he faced capital punishment if convicted).

[63] *State v. Hardesty*, 129 Wn.2d 303, 312, 915 P.2d 1080 (1996). "A defendant has no legitimate expectation of finality in a sentence which he places in issue by direct appeal." *United States v. Moreno-Hernandez*, 48 F.3d 1112, 1116 (9th Cir.), *cert. denied*, 515 U.S. 1151 (1995); *Ameline*, 376 F.3d at 984.

successive charges over a long span of time even though all charges stem from the same criminal episode.' "[64] It is unclear how an aggravating factor can become a new, related offense as Harris argues. But even if we were to assume consideration of aggravating factors becomes a "related offense," the rule is not implicated here. In fact, it is the court's consideration of those factors which is the basis of Harris' appeal. The aggravating factors *were* litigated at Harris' original sentencing hearing. Resentencing him on those factors after consideration by a jury of the underlying facts does not amount to successive prosecution.

 Harris also contends that allowing the superior court to empanel a jury on remand would violate the doctrine of separation of powers. Based on his assumption, to which we do not accede, that aggravating factors are now elements of a crime under *Apprendi, Ring,* and *Blakely,* he contends that only the prosecutor has authority to charge him with aggravating factors. Because the prosecutor must recommend a standard range sentence under the stipulation agreement, Harris concludes he cannot charge these elements/aggravating factors, and the superior court cannot pursue them sua sponte without usurping the prosecutor's charging authority. We decline to reach this issue. It is not fully briefed by the parties, and it is unclear whether the superior court will even pursue a sua sponte exceptional sentence on remand. Under the circumstances, resolution of this issue is best left to the superior court.

The sentence is reversed and remanded for further proceedings consistent with this opinion.[65]

ELLINGTON, J., concurs.

---

[64] *State v. Lee,* 132 Wn.2d 498, 503, 939 P.2d 1223 (1997) (quoting *State v. Harris,* 130 Wn.2d 35, 44, 921 P.2d 1052 (1996)).

[65] In his opening brief, Harris argued that the aggravating factors cited in support of his sentence had to be pleaded in the information. In his reply brief, however, he expressly withdrew this argument, conceding that *Blakely* and *Apprendi* "do not address this constitutional right." Accordingly, this issue is no longer before us.

Cox, C.J. (concurring) — I concur. I agree with the majority that our statutes, governing case law, and court rules support the conclusion that trial courts have inherent power to empanel juries to try alleged aggravating sentencing circumstances. I write separately to emphasize that whether courts invoke that power is another matter, requiring careful consideration of the circumstances and the interests of justice in each case.

This is especially so in cases where sentencing was imposed before *Blakely* was decided.[66] When such cases are remanded for resentencing, they will likely present a myriad of challenges for the parties and the court. There will be particular difficulties in cases (like this one) in which the exceptional sentence was imposed by the court sua sponte. Harris agreed to a trial on stipulated facts, and the State agreed to make a sentencing recommendation at the low end of the standard range.

In another case argued with this one, the exceptional sentence was imposed sua sponte following a plea agreement in which the State agreed to recommend a standard range sentence.[67] In such circumstances, it is unclear what evidence can be presented to the court. Clearly, the State cannot violate its agreements.

Further, where evidence is presented, the defense may find it problematic to meet it, given that many of these cases have been under lengthy stays on appeal. It seems inevitable that other difficulties will arise in individual cases.[68]

Trial judges well understand that what is discretionary is not mandatory. The fact that inherent authority exists does not mean it must be exercised in every case. I believe

---

[66] 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[67] *State v. Maestas*, 124 Wn. App. 352, 101 P.3d 426 (2004).

[68] For example, Justice O'Connor, in her dissent in *Blakely*, identifies in a more general sense some of the problems that may occur at sentencings. 124 S. Ct. at 2546-47. Neither her list nor mine is exhaustive.

sentencing courts should exercise caution and restraint as they take on this difficult task.

One message of *Blakely* is clear: The legislature must amend the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, to conform to constitutional requirements. As of this writing, we are unaware of any proposed legislation that deals with the situation confronting us in this and other pending cases. Specifically, we have before us an appeal *following* a determination of guilt in which the trial court has imposed an exceptional sentence using procedures that the United States Supreme Court subsequently held to be unconstitutional.

The Washington legislature has not yet had the opportunity to address amendments to the SRA for future cases to cure the constitutional defects articulated by the United States Supreme Court. Presumably, the legislature will carefully study the issues and enact clear, consistent, and comprehensive legislation to address the problems that *Blakely* identifies and the diverse ways in which they may arise. However, the trial courts and the public need immediate guidance to resolve the question of what remedies are appropriate on remand for resentencing for this case and similar cases. Thus, it is appropriate for this court to provide that guidance now.

For these reasons, and despite the issues associated with the procedures, I concur with the reasoning and result in this case.

ELLINGTON, J., concurs with COX, C.J.

Reconsideration denied December 8, 2004.