[No. 30244-6-II.   Division Two.   February 15, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM JAMES MALICOAT, *Appellant*.

*David Schultz*, for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *Michael C. Kinnie, Deputy*, for respondent.

¶1 ARMSTRONG, J. — William J. Malicoat appeals his jury conviction of first degree murder, arguing that the trial court improperly admitted his statement to the police and certain hearsay statements the victim made to his mother and a friend. He also contends the judge commented on the evidence when he refused to allow Malicoat to handle the gun in court when other witnesses had. Finally, he argues that his counsel was ineffective, the prosecutor improperly questioned him, and the judge erred in imposing an exceptional sentence because Malicoat used sophisticated measures to conceal the victim's body. We affirm, but we vacate Malicoat's exceptional sentence and remand for sentencing consistent with *Blakely*.[1]

## FACTS

¶2 William J. Malicoat owed money to his cousin, Chad Dunaway. When Dunaway met Malicoat at a storage locker

---

[1] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

in Vancouver to collect, Malicoat shot and killed Dunaway. He and a friend then built a wooden box, put Dunaway's body inside, and buried it in the woods.

¶3 When Dunaway failed to return from his trip, his relatives suspected Malicoat of wrongdoing. They contacted the police, who called Malicoat in for an interview. After denying that he had a storage locker on Kaufman Avenue, Malicoat left the station. The police followed him to the storage locker and arrested him on an unrelated warrant. In the storage locker, the police found a pool of blood, a bullet hole, and a bullet.

¶4 At the station, the police advised Malicoat of his *Miranda*[2] rights. He waived them but later said, "maybe I should get an attorney." Clerk's Papers (CP) at 106. The police stopped questioning him and began to lead him back to jail. On the way, Malicoat started to sob and said, "He's up in the mountains by Lake Merwin." Report of Proceedings (RP) at 24-25. An officer asked if Dunaway was buried there and Malicoat said he was. The officers took Malicoat back to the station and again advised him of his *Miranda* rights. Malicoat agreed to talk and provided a tape-recorded statement, which the trial court admitted.

¶5 Following a CrR 3.5 hearing, the trial court ruled that Malicoat's response to the question "Is he buried?" was inadmissible because he had invoked his right to counsel. But the court ruled that his other statements were voluntary and admissible.

¶6 At trial, the court allowed Dunaway's ex-girl friend and his mother to testify that the victim told them Malicoat owed him money, the two had fought over the debt, Malicoat finally agreed to pay, and Dunaway was going to Vancouver to collect the debt. The trial court ruled the testimony admissible under ER 803(a), as evidence of the declarant's state of mind.

¶7 Malicoat testified that Dunaway had two guns with him and that he killed Dunaway in self-defense.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶8 During cross-examination, the prosecutor confronted Malicoat about misleading the police and telling them that he did not have a storage locker on Kaufman Avenue. The prosecutor also asked Malicoat to explain earlier testimony, including his statements that he acted in self-defense and that he wanted to give Dunaway a proper burial. Defense counsel objected twice; the trial court overruled both.

¶9 During Malicoat's testimony, defense counsel began to hand him the murder weapon. The trial court asked that defense counsel maintain possession of the gun. The court allowed the firearms examiner and the officer who logged the gun as evidence to handle the gun.

¶10 The jury found Malicoat guilty of first degree murder with a firearm. Finding considerable sophistication in Malicoat's planning of the crime and cover up, the trial court imposed an exceptional sentence of 480 months plus 60 months for the firearm enhancement.

## ANALYSIS

### Exceptional Sentence

¶11 Shortly before oral argument before us, the United States Supreme Court held in *Blakely* that the sentencing judge may not impose an exceptional sentence above the statutory standard range unless it is based on *"facts reflected in the jury verdict or admitted by the defendant." Blakely*, 542 U.S. at 303.

¶12 *Blakely* followed *Apprendi* and *Ring*.[3] In *Apprendi*, the court said that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' "

---

[3] *Ring v. Arizona*, 536 U.S. 584, 589, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002); *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

*Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

¶13 The trial judge found substantial and compelling reasons justifying an exceptional sentence because of Malicoat's "sophisticated and extensive measures to conceal the victim's body/dispose of evidence." CP at 84.

¶14 Malicoat contends that the sentencing procedures in this case were analogous to those in *Blakely*. He reminds us that he contested the trial court's factual finding that his crime was sophisticated and that he did not waive his right to have a jury determine whether the facts supported an enhanced punishment.

¶15 The State maintains that the trial court based the exceptional sentence on facts Malicoat admitted at trial, for example that he shot the victim, buried the body in a box he built, and threw the weapon off a bridge. The State reasons that these admissions authorized the exceptional sentence because *Blakely* allows the sentencing court to use either "facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis omitted). We disagree.

■ ■ ¶16 Although Malicoat did admit that he shot Dunaway, built a box and buried him in it, and then threw the gun off a bridge, he did not admit that he planned the crime. Rather, he testified that he shot Dunaway in self-defense. More importantly, he did not admit that his conduct was more sophisticated than usual. And this finding of sophistication was the ultimate fact the trial court relied on to impose the exceptional sentence. Under *Blakely*, Malicoat was entitled to have a jury decide whether his conduct was more sophisticated in planning and carrying out the murder than usual. Accordingly, we vacate Malicoat's sentence and remand for sentencing consistent with *Blakely*. The court may sentence either within the standard range or, if the State again seeks an exceptional sentence, the court must base it on facts Malicoat admits or a jury finds beyond a reasonable doubt. *State v. Harris*, 123 Wn. App. 906, 99 P.3d 902, 911 (2004). The

State may move to empanel a sentencing jury on remand. *State v. Fero*, 125 Wn. App. 84, 102, 104 P.3d 49 (2005).

¶17 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON and BRIDGEWATER, JJ., concur.

Review denied at 155 Wn.2d 1013 (2005).