NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 5 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHONG YIM; MARILYN YIM; KELLY LYLES; EILEEN, LLC; RENTAL HOUSING ASSOCIATION OF WASHINGTON, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> CITY OF SEATTLE, a Washington municipal corporation, <br><br> Defendant - Appellee. | No. 24-6214 <br><br> D.C. No. 2:18-cv-00736-BJR <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Barbara Jacobs Rothstein, District Judge, Presiding

Submitted July 29, 2025[**]

Before: WARDLAW, GOULD, and BENNETT, Circuit Judges.

Chong and Marilyn Yim, Kelly Lyles, and Eileen, LLC, and the Rental

Housing Association of Washington (collectively "landlords") appeal the district

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

court's summary judgment order finding severable a provision of the City of Seattle's (the "City") Fair Chance Housing Ordinance ("FCHO").  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Recognizing that homelessness is a serious and expanding epidemic in our nation, the City enacted a series of ordinances to specifically combat the "prison to homelessness pipeline."  *Yim v. City of Seattle* (*Yim I*), 63 F.4th 783, 788–90 (9th Cir. 2023).  At issue here is one provision of the FCHO that prohibits a landlord from: (1) "[r]equi[ring] disclosure" of one's criminal history ("the Requirement Provision"); (2) "inquir[ing] about" one's criminal history (the "Inquiry Provision"); and (3) tak[ing] "adverse action" based on one's criminal history (the "Adverse Action Provision").  Seattle, Wash., Municipal Code (S.M.C.) § 14.09.025(A)(2).  *See Yim I*, 63 F.4th at 787.  In our prior opinion, we concluded that the Inquiry Provision violated the First Amendment, but that the Adverse Action Provision was consistent with the Fourteenth Amendment.  *Yim I*, 63 F.4th at 787.  We remanded this case to the district court to consider the issue of severability in the first instance.  *Id.* at 799. On remand, the district court concluded that the Inquiry Provision was severable from the remainder of the FCHO.

The district court correctly concluded that the Inquiry Provision[1] is severable from the rest of the FCHO. Because severability is a question of state law, we apply the traditional two-step test that Washington courts apply,[2] asking:

> [1] whether the constitutional and unconstitutional provisions are so connected . . . that it could not be believed that the legislature would have passed one without the other; or [2] where the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature.

*El Centro de la Raza*, 192 Wash. 2d at 132 (omission in original) (quoting *State v. Abrams*, 163 Wash. 2d 277, 285–86 (2008)). "We examine the challenged statute as a whole to determine whether the legislature could have intended to enact the valid sections alone and whether those valid sections alone work to achieve the legislature's goals." *Ass'n of Washington Bus. v. Washington State Dep't of Ecology*, 195 Wash. 2d 1, 18 (2020). Washington law recognizes a presumption of severability and instructs "courts determining severability to refrain from

---

[1] Landlords' contention that our prior opinion necessarily commented on the validity of the Requirement Provision is meritless. Our prior opinion limited its consideration to only the Inquiry and Adverse Action Provisions. *See Yim I*, 63 F.4th at 792, 798.

[2] Landlords also analyze severability under the grammatical, volitional, and functional severability tests, which the Washington Supreme Court has also employed. *See El Centro de la Raza v. State*, 192 Wash. 2d 103, 133 (2018). However, the volitional and functional tests align with the traditional two-step test that Washington employs, and landlords concede that the Inquiry Provision is grammatically severable from the Adverse Action Provision. Landlords' argument that the Inquiry Provision is not grammatically severable from the Requirement Provision fails.

3                                                          24-6214

invalidating more of the statute than is necessary so as not to frustrate the intent of the Legislature." *State v. Harris*, 123 Wash. App. 906, 918 (2004) (quotations and footnote omitted) *overruled on other grounds by, State v. Hughes*, 154 Wash. 2d 118 (2005).

As to the first prong—legislative intent—the district court correctly concluded that the provisions are not so connected that the City would not have passed one without the others. The existence of a severability clause, S.M.C. § 14.09.120, "provide[s] the necessary assurance that the [City] would have enacted the appropriate sections of the [FCHO] despite the unconstitutional section[]." *El Centro de la Raza*, 192 Wash. 2d at 132 (first alteration in original) (quoting *Gerberding v. Munro*, 134 Wash. 2d 188, 197 (1998); *accord Yim I*, 63 F.4th at 799 ("Absent any legislative intent to the contrary, a severability clause ordinarily 'creates a presumption that if one section is found unconstitutional, the rest of the statute remains valid.'") (citation omitted). Furthermore, the rest of the FCHO—which prohibits requiring disclosure of criminal history, taking adverse actions based on criminal history, and implementing advertising, publicizing, or implementing an automatic exclusion based on criminal history—advances the City's stated objectives of: "(1) address[ing] barriers to housing faced by people with prior records; and (2) lessening the use of criminal history as a proxy to discriminate against people of color who are disproportionately represented in the

criminal justice system." *Yim I*, 63 F.4th at 789 (alteration in original) (quotations and citation omitted).  Finally, the fact that the City enacted the Fair Chance Employment Ordinance—which arose from the same record that led to the enactment of the FCHO and which prohibits adverse actions based on criminal history while allowing inquiry into criminal history—is strong evidence that the City would have enacted the remaining provisions of the FCHO had it known of the Inquiry Provision's invalidity.  *See* S.M.C. § 14.17.020.

As to the second prong—workability—the district court also correctly concluded that the Inquiry Provision was not "so intimately connected with the balance of the act as to make [the act] useless to accomplish the purposes of the legislature." *El Centro de la Raza*, 192 Wash. 2d at 132 (quoting *Abrams*, 163 Wash. 2d at 285–86).  As noted above, the FCHO continues to accomplish the City's stated objective without the Inquiry Provision.  To be sure, the FCHO is less effective without the Inquiry Provision.  *See Yim I*, 63 F.4th at 795 n.16.  However, "[a] less effective regulation can still advance the purpose of the statute under which it is promulgated, particularly where—as here—the unauthorized portions of the [ordinance] can be severed without impact on the operation of the remainder of the [ordinance]." *Ass'n of Wash. Bus.*, 195 Wash. 2d at 21; *see id.* at 20–21 (holding that even though the severance of the rule in question "may result in only a fraction" of its intended benefits, "this reduction [did] not render the [r]ule

useless").[3]

**Affirmed.**

---

[3] Landlords' reliance on the City's litigation position that anything less than a ban on inquiring into criminal history would make the FCHO ineffective does not overcome the aforementioned evidence of the City's legislative intent. The severability analysis focuses on the intent of the legislative body *at the time it enacted the ordinance*. *See El Centro de la Raza*, 192 Wash. 2d at 132; *accord Acosta v. City of Costa Mesa*, 718 F.3d 800, 817 n.10 (9th Cir. 2013) (per curiam) ("California courts look to what the intentions were of the enacting body *at the time of enactment* to determine whether volitional severability is met. They do not look to the *post hoc* litigating position taken by the government with respect to what should be done to the statute.") (citation omitted). Thus, the City's post hoc assertions carry little probative weight.