[No. 22652–5–I.   Division One.   January 16, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. CLARENCE
ARBY DANIELS, *Appellant.*

---

[10]See RCW 2.06.040; CAR 14.

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeffrey Baird, Deputy,* for respondent.

WEBSTER, J.—Clarence Arby Daniels appeals a conviction of second degree assault for knowingly inflicting grievous

bodily harm. He also challenges a 10–year exceptional sentence, the statutory maximum. The court imposed the maximum because it could not "imagine a more egregious example of assault in the second degree". Daniels contends his sentence violates the real facts doctrine because the court considered multiple beatings of his stepson within a 5–month charging period. The last beating left the child in a coma for several weeks and in a mute and helpless condition requiring lifelong nursing care.

## FACTS

The trial court admitted photographs showing injuries to Daniels' 6–year–old victim. The boy was connected to a respirator, intravenous tubes, a catheter, and other life support equipment. He had lacerations and scars over much of his body, particularly on his back. The cuts, in various stages of healing, and the scars, indicated that they had occurred over a long period of time, a matter of weeks, at least. Daniels inflicted the wounds with a VCR cable. Sometimes he had to chase the boy around a room to whip him. He held the victim with one arm and whipped him with the other. He could not remember all the times. On one occasion he whipped the boy until the child passed out.

The victim had other injuries which were not apparent from the photographs. Medical testimony established these injuries. One was an untreated, 6–week–old fracture of the arm. The most serious was bleeding and swelling of the brain. Daniels suggested this might have happened in a fall down stairs, but the kind of blow necessary to cause the injury was "extremely unlikely to have happened by any sort of an accident." The head injury would have resulted in death if it had not been for successful brain surgery. The neurosurgeon who performed the surgery discovered two distinct brain injuries, several days apart in origin. These resulted in epileptic seizures that are a continuing problem.

Daniels admitted hitting the victim with a two–by–four at about the same time of the alleged fall down the stairs. However, he denied hitting the boy anywhere other than on

the seat of the pants. The defense asserted that the injuries inflicted by Daniels were imposed as reasonable parental discipline. The court refused to instruct the jury on third degree assault on the theory the Daniels negligently inflicted physical injury with a weapon.

## PHOTOGRAPHS OF THE VICTIM

Daniels challenges the trial court's admission of photographs showing the victim's injuries and current condition at a nursing home. The State offered the photos to disprove reasonable parental discipline, to prove knowing infliction of grievous bodily harm, and to demonstrate the continuous nature of the offense. The photos were necessary in part because the victim could not speak. The trial court found the photos were "not inherently gruesome" and permitted one for each section of the child's body.

■ "Photographs, even if gruesome or unpleasant, are admissible if the trial court finds their probative value outweighs their prejudicial effect." *State v. Harris*, 106 Wn.2d 784, 791, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987). Unless it is clear from the record that the primary reason to admit gruesome photographs is to inflame the jury's passion, appellate courts will uphold the decision of the trial court. *Harris*, 106 Wn.2d at 791, citing *State v. Jones*, 95 Wn.2d 616, 628 P.2d 472 (1981). In *Harris*, the State claimed the victim appeared surprised, but the victim's face, lying dead in a pool of blood, arguably showed no surprise whatsoever. Nevertheless, the court affirmed in deference to the trial court. 106 Wn.2d at 792. A particularly gruesome photograph was admitted in one case because it tended to rebut a claim of self–defense or accident. *Harris*, at 791–92, citing *State v. Hatley*, 41 Wn. App. 789, 706 P.2d 1083, *review denied*, 104 Wn.2d 1024 (1985). Graphic photographs of injuries were admitted in another case to corroborate a recanting witness's testimony that the defendant confessed that he and an accomplice stabbed and beat the victim with a baseball bat. *See State v. Drummer*, 54 Wn. App. 751, 755–56, 775 P.2d 981 (1989).

Here, the State had a right to present photographic evidence to amply prove every element of the crime charged, and to rebut all defenses, even if the effect was substantial duplication of the medical testimony. *See State v. Crenshaw,* 98 Wn.2d 789, 806–07, 659 P.2d 488 (1983). The defense was that Daniels caused his stepson's injuries without realizing how serious they were. The photos are the best, clearest, most compelling evidence to the contrary. "'A . . . brutal crime cannot be explained to a jury in a lilywhite manner'." *Crenshaw,* at 807, quoting *State v. Adams,* 76 Wn.2d 650, 656, 458 P.2d 588 (1969), *rev'd on other grounds,* 403 U.S. 947 (1971). Pictures of the child at the nursing home show the victim's current condition, and, by implication, the extent of injury. This case is actually easier than *Crenshaw* because the trial court avoided unnecessary duplication. The court's careful exercise of discretion is also shown by its denial of the State's request to have the victim present because the emotional impact threatened to be overwhelming.

### REFUSAL TO INSTRUCT ON THIRD DEGREE ASSAULT

■ A defendant is entitled to an instruction on a lesser included offense if (1) each of the elements of the lesser offense is a necessary element of the offense charged and (2) the evidence supports an inference that only the lesser crime was committed. *State v. Workman,* 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978); *State v. Partosa,* 41 Wn. App. 266, 269–70, 703 P.2d 1070 (1985). Here, the first prong of *Workman* is not met. Third degree assault under the theory proposed requires proof of a weapon. *See* former RCW 9A.36.030(1)(b). Second degree assault as charged does not. A person commits second degree assault by knowingly inflicting grievous bodily harm with or without a weapon. Former RCW 9A.36.020(1)(b).

■ Daniels nevertheless argues that he is entitled to an instruction under RCW 10.61.003:

Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and

guilty of any degree inferior thereto, or of an attempt to commit the offense.

Even under this statute, and under RCW 10.61.010,[1] a defendant may only be convicted of a lesser degree when there is evidence that the lesser crime *alone* has been committed. *See State v. McPhail,* 39 Wash. 199, 203, 81 P. 683 (1905); *State v. Gottstein,* 111 Wash. 600, 602, 191 P. 766 (1920). This is the second prong of *Workman.*

In the case of third degree assault, the language of the statute defining the offense specifically requires that the evidence not rise to the level of first or second degree assault. *See State v. Stationak,* 73 Wn.2d 647, 649–50, 440 P.2d 457 (1968). "Since third degree assault is defined as one 'not amounting to assault in either the first or second degrees,' if the facts of the case are such that defendant could have been found guilty of either first or second degree assault, then he could not have been found guilty of third degree assault." (Footnote omitted). *Stationak.* In *Stationak,* the defendant pointed a gun at the victim, who suffered serious injury when it discharged. The defendant insisted he did not know the gun was loaded. Therefore, he argued, he did not have the requisite intent to inflict bodily harm, and should have been convicted, if at all, of third degree assault. Our Supreme Court disagreed.

> Under all of the evidence . . . the defendant was guilty of first or second degree assault or of none at all. There was no evidence which would justify the jury in returning a verdict of guilty of assault in the third degree. The proposed instruction on third degree assault was, therefore, properly refused.

*Stationak,* at 650–51.

In Daniels' case, it is inconceivable he did not knowingly inflict grievous bodily harm. "A person . . . acts knowingly . . . when . . . he has information which would lead a reasonable [person] in the same situation to believe that facts

---

[1]RCW 10.61.010 provides in pertinent part:

"Upon the trial of an indictment or information, the defendant may be convicted of the crime charged therein, or of a lesser degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a lesser degree of the same crime."

exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b)(ii). The fact in question is the infliction of grievous bodily harm. Any reasonable person in Daniels' position would have known he was inflicting grievous bodily harm.

## EXCEPTIONAL SENTENCE

We must affirm Daniels' sentence if the reasons for it are supported by the record, those reasons justify an exceptional sentence, and the sentence is not clearly excessive. *See* RCW 9.94A.210(4). The court gave several reasons for an exceptional sentence: (1) the crime manifested deliberate cruelty; (2) the child was particularly vulnerable due to extreme youth; (3) the victim suffered countless assaults; (4) the defendant shunned responsibility before and after abandoning his victim at a hospital; and (5) the victim had no sanctuary or escape from the constant threat of assault. The record supports these reasons, and they justify an exceptional sentence. *See State v. Creekmore,* 55 Wn. App. 852, 783 P.2d 1068 (1989). The only question is whether the court's consideration of multiple incidents of child abuse within the 5–month charging period violated the real facts doctrine of the Sentencing Reform Act of 1981, RCW 9.94A.370(2).

Preliminarily, we reject Daniels' argument that the degree of harm in this case was necessarily considered in the concept of grievous bodily harm. If Daniels had simply kicked his stepson on an isolated occasion, or momentarily scalded him with hot coffee, without causing any permanent injury, disfigurement, physical impairment, or psychological trauma, his argument might have force. *See State v. Armstrong,* 106 Wn.2d 547, 550, 723 P.2d 1111 (1986); *State v. Butler,* 53 Wn. App. 214, 225, 766 P.2d 505, *review denied,* 112 Wn.2d 1014 (1989). But here, the injury does not merely bring Daniels' conduct within the definition of second degree assault. Daniels inflicted at least "great bodily harm" as that term is now used in the definition of first degree assault, a class A felony with a maximum penalty of

life imprisonment. *See* RCW 9A.36.011(1)(c) (effective July 1, 1988). "'Great bodily harm' means bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c).

█  Under the real facts doctrine, RCW 9.94A.370(2), "[f]acts that establish the elements of . . . additional crimes may not be used to go outside the presumptive sentence range except . . . when specifically provided for in RCW 9.94A.390(2)(c), (d), and (e)." The statutory exceptions "are illustrative only and are not intended to be exclusive reasons for exceptional sentences." RCW 9.94A-.390. For example, the first statutory exception applies when a "major economic offense" involves "multiple incidents per victim". RCW 9.94A.390(2)(c)(i). Our Supreme Court expanded this exception in a case of child abuse where the defendant momentarily scalded the victim twice over a period of seconds. *See State v. Armstrong,* 106 Wn.2d at 550. The court applied "a similar analysis" to a defendant who shot his victim once, began to leave the scene, and then returned to shoot again. *See State v. Dunaway,* 109 Wn.2d 207, 219, 743 P.2d 1237, 749 P.2d 160 (1987). Arguably, "*Armstrong* and *Dunaway* are distinguishable in that the multiple incidents occurred during the course of a continuing offense" spanning a brief period of time. *Creekmore,* 55 Wn. App. at 861 n.1; *see Butler,* 53 Wn. App. at 227 n.8.

We do not rely on the "multiple incidents" exception as applied in *Armstrong* or *Dunaway,* because the third statutory exception to the real facts doctrine is more applicable to the facts of this case. The court in *Creekmore* considered the effect of this exception, RCW 9.94A.390(2)(e): "The offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time". The court concluded, "Considering the spirit of the 'sexual

abuse' exception, and the just punishment and proportionality goals of the SRA, we see no reason why the 'sexual abuse' exception should not be expanded to encompass multiple incidents of child abuse." *Creekmore,* at 861 n.1. We agree. The "spirit" of the exception derives from the nature of child abuse cases in general.

> Particularly when the accused resides with the victim or has virtually unchecked access to the child, and the abuse has occurred on a regular basis and in a consistent manner over a prolonged period of time, the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places.

*State v. Brown,* 55 Wn. App. 738, 746–47, 780 P.2d 880 (1989). If prosecutors were required to rely on separate convictions for each particular instance of abuse, "the most egregious child molesters effectively would be insulated from prosecution." *Brown,* at 749. As in *Brown,* "[w]e cannot countenance such a result when alibi or misidentification is not raised" and supported by the evidence. *Brown,* at 749.

> As previously noted, "resident child molester" cases are among the most difficult to prosecute, in large part because usually there are no witnesses except the victim, for whom the experience is often an indistinguishable blur he or she has tried to forget. Consequently, these cases present problems of proof that make multiple charges impractical. However, these problems should not benefit the defendant at sentencing. When there is proof of multiple incidents [per count], we think the proportionality goals of the SRA are better served by consideration of those incidents in the sentencing decision.

*Brown,* at 755. We hold that the trial court properly considered multiple incidents of child abuse over a prolonged period of time in imposing Daniels' sentence, because it would be unrealistic for the State to charge a separate count for each particular instance of abuse under the facts of this case.

The trial judge could not "imagine a more egregious example of assault in the second degree". We agree that this is the type of crime for which the statutory maximum

is appropriate. *See Creekmore,* 55 Wn. App. at 865–66 ("statutory maximum . . . is the only limit to the trial court's discretion in egregious cases"); *see also State v. Roberts,* 55 Wn. App. 573, 779 P.2d 732 (1989) (10–year maximum imposed for extreme case of vehicular homicide). The sentence was not excessive.

We affirm.

COLEMAN, C.J., and GROSSE, J., concur.

Review denied at 114 Wn.2d 1015 (1990).