[No. 26635-7-I. Division One. February 3, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES L. OVERVOLD, *Appellant*.

442

*Mary Jane Ferguson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

AGID, J. — James Overvold appeals the exceptional sentence upward imposed by the trial court for two counts of indecent liberties, to which he entered an *Alford*[1] plea on April 30, 1990. The victim was his daughter, C. The certification for determination of probable cause provided to the trial court[2] described the events on which the charges were based as follows:

> [C] recalls that when she was 4 years of age James Overvold began coming into her bedroom; that he would lie down on the bed beside her and remove her underwear. For a short time the sexual contact stopped but then it reoccurred with increasing frequency.
> During a camping trip to Red Mountain, James Overvold woke her in the middle of the night. He took her behind a tarp and attempted to insert his penis into her vagina. [C] cried out in pain and James stopped. The next morning [C] told her mother what happened. [C]'s mom . . . confronted James with this allegation and his now broken promise that this would not happen again. These events occurred between January 1986 and January 1987, just outside Enumclaw. During the incident James said he just wanted to see if [C] was big enough. But the abuse continued, in each house that [C] has lived in since she was four. The first time [C] disclosed was in Tacoma. At that time James agreed to seek psychiatric help

---

[1] *See North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

[2] Overvold agreed to allow the judge to read the certification for purposes of the plea and for sentencing, and agreed to allow the trial court to review the witness statement for purposes of the plea.

and apologized to [C] for what he was doing to her. [C] recalls that these incidents happened frequently and that they usually entailed James rubbing his penis against her private area. These events occurred in Tacoma, in White Center and in Pacific.

Between January 1984 and January 1985 while living in White Center, James attempted to force sex between [C] and her brother . . .. But when [C] refused, [C's brother] was sent back to bed. James then proceeded to rub his genitals against [C]'s vagina.

[C's mother] confronted James Overvold about his conduct on at least two occasions. Each time he promised to get help and to stop the abuse. He did not get help and the abuse continued.

The certification was based on C's witness statement which was slightly more detailed. In her statement she said that she was afraid to be alone in the house with her father, that she was scared to go to bed at night, that she was doing poorly in school, and that at times she hated living because of what had happened to her.

The sentencing judge made the following findings of fact:

1. The defendant abused the victim on multiple occasions over a 10-year period.

2. The victim was extremely vulnerable by virtue of her age and the defendant's authority as a parent.

3. The defendant repeatedly indicated he would stop the abuse, but did not.

4. The defendant's abuse caused great pain and suffering to the victim.[3]

She entered the following conclusion of law based on these findings:

The crime is aggravated by all the [above] factors; substantial and compelling reasons to depart upward are present.

---

[3]At the sentencing hearing, the judge explained the aggravating circumstances on which she relied in the following terms:

"The Court finds that in this case there are multiple incidents over a long period of time, a ten-year period, that this started when the child was four years of age, that the child in this particular case was particularly vulnerable, that this continued over a period of time inflicting great pain and suffering upon that child.

"The Court finds that the behavior continued, even when he promised it would stop, he continued, that that was his own child. She had nowhere else to go."

On June 29, 1990, the trial court sentenced Overvold to an exceptional sentence of 72 months on each count, to run concurrently. The standard range for each count was 15 to 20 months. Overvold contends that the sentencing judge erred in imposing an exceptional sentence based on these findings and that the sentence itself was excessive.

■ Under the Sentencing Reform Act of 1981, a trial court must impose a sentence within the standard range unless it finds substantial and compelling reasons to justify a departure. RCW 9.94A.120(2). In determining whether an exceptional sentence upward should be upheld, we consider whether (1) the reasons given by the trial court to justify the exceptional sentence are supported by the record; (2) those reasons justify a departure from the standard range as a matter of law; and (3) the sentence imposed is clearly excessive. RCW 9.94A.210(4); *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991).

■■ While Overvold contends that some of the findings are not supported by the record, those contentions are without merit. The record consists of only the certification for determination of probable cause and C's witness statement, both of which support the trial court's findings of fact. We therefore must determine whether the reasons for the exceptional sentence are "substantial and compelling" and do not take into account factors already considered in establishing the standard sentencing range for the crime. *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986). Overvold also challenges the length of his sentence. The question of whether the sentence is clearly excessive is reviewed under an abuse of discretion standard. *Allert*, 117 Wn.2d at 163 (citing *State v. Pascal*, 108 Wn.2d 125, 135, 736 P.2d 1065 (1987)).

## PRIOR PATTERN OF ABUSE

■ Overvold first contends that the trial court erroneously relied on incidents of abuse not charged in the information in finding that the abuse occurred over a 10-year period. While RCW 9.94A.390(2)(e) now provides that mul-

tiple incidents of sexual abuse over a period of time may be considered as an aggravating factor, Overvold argues that the court's consideration of this factor violates ex post facto prohibitions because this statute took effect on July 26, 1987, halfway through the second charging period. Because the aggravating factors listed in RCW 9.94A.390 are illustrative and not exclusive, however, the court could consider the fact that the incidents charged were part of an ongoing pattern of abuse even before that date. Consideration of this factor therefore does not violate ex post facto prohibitions.

■ Further, while facts that establish the elements of uncharged crimes generally may not be relied on to justify an exceptional sentence under RCW 9.94A.370(2), a number of judicially created exceptions to the real facts doctrine have been established.[4] Here, the sentencing judge relied on a pattern of abuse, not additional, discrete incidents which could have been charged and from which it is therefore unfair to exempt the State from proving.[5] As we explained in *State v. Daniels*, 56 Wn. App. 646, 654, 784 P.2d 579, *review denied*, 114 Wn.2d 1015 (1990):

> Particularly when the accused resides with the victim or has virtually unchecked access to the child, and the abuse has occurred on a regular basis and in a consistent manner over a prolonged period of time, the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. . . .

---

[4]For example, even before 1987, our courts sanctioned the use of the "multiple incidents per victim" factor listed in former RCW 9.94A.390(3)(a), previously applied only in economic offenses, to justify an exceptional sentence in a case of multiple incidents of sexual assault. *State v. Brown*, 55 Wn. App. 738, 755, 780 P.2d 880 (1989) (citing *State v. Armstrong*, 106 Wn.2d 547, 550, 723 P.2d 1111 (1986)), *review denied*, 114 Wn.2d 1014 (1990).

[5]The circumstances here are distinguishable from those in *State v. Grewe*, 59 Wn. App. 141, 146, 796 P.2d 438 (1990), where we held that the trial court improperly considered uncharged incidents in imposing an exceptional sentence. In *Grewe*, the incidents relied on involved different individuals and represented completely distinct incidents. The Supreme Court did not address this issue on its review of the case because the State did not challenge our conclusion with respect to this matter. *State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991).

*State v. Brown*, 55 Wn. App. 738, 746-47, 780 P.2d 880 (1989).
. . .
. . . [T]he experience is often an indistinguishable blur [the victim] has tried to forget. Consequently, these cases present problems of proof that make multiple charges impractical. However, these problems should not benefit the defendant at sentencing. [*Brown*, 55 Wn. App. at 755.]

Precisely the same circumstances existed in this case and, like the courts in *Daniels* and *State v. Brown*, 55 Wn. App. 738, 780 P.2d 880 (1989), we hold that the trial court properly considered multiple incidents of child abuse over a prolonged period of time.[6]

### VICTIM VULNERABILITY AND ABUSE OF TRUST

■ Overvold next contends that the trial court erred in finding that the victim was particularly vulnerable. The trial court's finding of extreme vulnerability was premised both on the victim's age, *i.e.*, that she was only 4 years old when the abuse started, and on the defendant's position of trust and authority as her father.[7] Overvold argues, however, that because C was 9 years old when the earlier of the two charging periods began, and because RCW 9.94A-.390(2)(b) permits the court to consider the particular vulnerability of the victim due to extreme youth with respect to the current offense only, the court erred in relying on C's age at the time the abuse started. *State v. Woody*, 48 Wn. App. 772, 777, 742 P.2d 133 (1987), *review denied*, 110 Wn.2d 1006 (1988) established that a 7-year-old child is not particularly vulnerable as a matter of law with respect to the crime of indecent liberties by virtue of his or her age alone.[8] While C's age at the time of the incidents charged

---

[6]*See also State v. Handley*, 115 Wn.2d 275, 282, 796 P.2d 1266 (1990) ("[T]he particular circumstances surrounding a crime are not factored into the calculation of the standard range. Yet . . . it is exactly those unique circumstances which determine the appropriateness of an exceptional sentence.").

[7]While the sentencing judge expressed this simply as "the defendant's authority as a parent", it is apparent that the court was noting that Overvold utilized his position of trust to facilitate the crime.

[8]*But see State v. Fisher*, 108 Wn.2d 419, 424, 739 P.2d 683 (1987) (5-year-old child is particularly vulnerable with respect to the crime of indecent liberties).

thus precludes a finding that she was particularly vulnerable by virtue of her age alone, the trial court may consider the fact that the abuse of a child started at an extremely young age in terms of the consequent psychological vulnerability of the child. *See Brown*, 55 Wn. App. at 754.

■ Further, while Overvold's position as the victim's father does not require a finding that the victim was particularly vulnerable, the relationship between C and her father here was sufficient to establish a separate ground for an exceptional sentence based on the defendant's abuse of a position of trust. *State v. Fisher*, 108 Wn.2d 419, 427, 739 P.2d 683 (1987) ("A relationship extending over a longer period of time, or one within the same household, would indicate a more significant trust relationship, such that the offender's abuse of that relationship would be a more substantial reason for imposing an exceptional sentence.").

■ Overvold also argues that the trial court should not have considered his status as the victim's father because that factor had already been taken into consideration by the Legislature in establishing the standard sentence range for violations of former RCW 9A.44.100(1)(c). The statute and case law do not support this argument. In *State v. Grewe*, 117 Wn.2d 211, 813 P.2d 1238 (1991), the court held that, when a defendant is charged not under section (c) but under section (b) of the statute,[9] it is appropriate to consider abuse of trust as an aggravating factor. 117 Wn.2d at 217. The court reasoned as follows:

> By drafting alternative forms of the same crime, the Legislature manifested its belief a particular crime could be achieved by distinct combinations of elements. Where a single criminal act includes all of the elements of one form of the

---

[9]Former RCW 9A.44.100(1) provided that a person could commit the crime of indecent liberties by any of the following means:

"(a) By forcible compulsion; or

"(b) When the other person is less than fourteen years of age; or

"(c) When the other person is less than sixteen years of age and the perpetrator is more than forty-eight months older than the person and is in a position of authority over the person; or

"(d) When the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless."

crime as well as additional discrete elements from an alternative form, the crime exceeds that contemplated by the Legislature. In drafting former RCW 9A.44.100(1), the Legislature viewed a position of authority as a necessary element only where the victim is between the ages of 14 and 16. *Where a position of trust is abused when a child is under 14, a crime exceeding the Legislature's contemplation has been committed meriting an exceptional sentence.*

(Italics ours.) 117 Wn.2d at 217-18. Overvold was likewise charged under subsection (b) of the statute, and the same reasoning applies. The trial court therefore did not err in relying on Overvold's abuse of his position of trust as the victim's father as an aggravating factor.

### PAIN AND SUFFERING

■ Overvold further argues that the trial court erred in relying on its finding that the abuse caused the victim great pain and suffering in excess of the pain normally inherent in the crime of indecent liberties. While facts establishing the pain and suffering C endured must be inferred from the certification of probable cause, the witness statement establishes that she was afraid to be alone in the house with her father, that she was scared to go to bed at night, and that at times she hated living because of what had happened to her.[10] It is hard to conceive how such feelings could be the

---

[10]The appellant suggests that it was improper for the judge to rely on the witness statement for sentencing purposes since he agreed to let the judge read the witness statement only for purposes of the plea. While we held in *State v. Young*, 51 Wn. App. 517, 521-22, 754 P.2d 147 (1988) that the trial court there improperly relied on facts set forth in the certification of probable cause, *Young* does not control here. In *Young*, the defendant had not agreed to allow the court to rely on the certification for sentencing purposes and further made it clear that he intended to dispute its allegations at the sentencing hearing. 51 Wn. App. at 522. Here, in contrast, the appellant explicitly agreed to allow the sentencing judge to refer to the certification of probable cause for sentencing purposes and did not manifest any intention not to admit to the facts therein.

RCW 9.94A.370(2) permits a court to review materials submitted in connection with a plea agreement in making a sentencing determination. A sentencing court may rely on any information which is admitted, acknowledged, or proved at the time of trial or at sentencing. *State v. Handley*, 115 Wn.2d 275, 281, 796 P.2d 1266 (1990); *State v. Herzog*, 112 Wn.2d 419, 430-31, 771 P.2d 739 (1989). The appellant clearly permitted the trial court to consider the witness statement at the plea hearing. He cites no authority for the proposition that matters

product of anything other than great pain and suffering.[11] While Overvold correctly observes that courts may not rely on factors taken into account by the Legislature in establishing the presumptive sentence, *see Nordby*, 106 Wn.2d at 518, trauma in excess of that contemplated by the Legislature or an effect on a victim significantly more serious than the usual case may support an exceptional sentence. *Fisher*, 108 Wn.2d at 428; *State v. Tunell*, 51 Wn. App. 274, 279, 753 P.2d 543 (serious psychological effects including difficulty at school), *review denied*, 110 Wn.2d 1036 (1988); *State v. Altum*, 47 Wn. App. 495, 504, 735 P.2d 1356 (psychological trauma), *review denied*, 108 Wn.2d 1024 (1987). There is no basis for concluding that the Legislature contemplated multiple incidents and a continued pattern of abuse in establishing the penalty for one count of indecent liberties. We conclude that circumstances such as those here involving a continuing pattern of sexual abuse over a 10-year period by a parent in a position of trust may expose the victim to a degree of pain and suffering in excess of that normally inherent in the crime of indecent liberties.

### PROMISES TO STOP THE ABUSE

Overvold finally contends that the trial court erred in finding that the exceptional sentence was justified in part by the fact that the defendant had "repeatedly indicated he would stop the abuse, but did not." This factor in and of itself is insufficient to provide an independent legal basis to support an aggravated sentence. However, it may be used as a factual basis for the legal grounds on which the trial court relied in imposing the exceptional sentence. Overvold's repeated promises to stop underscore the degree

---

considered at that stage of the proceeding may not be considered at sentencing in the absence of an objection. Because this finding is indirectly supported by the certification of probable cause, and directly supported by the witness statement, this finding is supported by the record.

[11]C's pain was further evident in her own oral statement to the court:

"I think that he's ruined our family that we had and that he had no right, because a parent is supposed to protect their children and he didn't protect me. He was the one that hurt me. "

to which he abused his position of trust and authority to facilitate the crime. Similarly, those promises no doubt increased the pain and insecurity C felt, thus aggravating the psychological damage she sustained. The broken promises also suggest an increased level of culpability: the father persisted despite his admitted awareness that he was hurting his daughter.

Even though Overvold's repeated promises to stop are not sufficient as a matter of law to support the sentence, we need not remand for resentencing unless we find that the trial court would not have imposed the sentence it did had it failed to consider that factor. *State v. Pryor*, 115 Wn.2d 445, 456, 799 P.2d 244 (1990); *In re George*, 52 Wn. App. 135, 149, 758 P.2d 13 (1988). There is no basis in this record to conclude that the trial judge would have imposed a different sentence had she not considered the promises to stop. Her oral opinion focused primarily on the duration of the abuse, victim vulnerability, and the position of trust Overvold occupied. Because the trial court could properly consider promises to stop as a factor underlying the three proper bases for an exceptional sentence, there is no need to remand the case.

Nor do we find that the sentence was clearly excessive. A court abuses its discretion in this regard only when it imposes a sentence that no reasonable person would have imposed. *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986). Here, the sentencing judge was presented with facts that supported not just one but several aggravating factors. Because the sentence imposed was not unreasonable given these circumstances, the sentence was not clearly excessive.

Affirmed.

GROSSE, C.J., and PEKELIS, J., concur