
COURT OF APPEALS DIV
STATE OF WASHINGTON

2013 MAY -6 AM 9: 21

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>CHRISTOPHER WILLIAM CLARK,<br><br>               Appellant. | No. 69899-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: May 6, 2013 |

LEACH, C.J. — Christopher Clark appeals his conviction for second degree assault of a child. He alleges that the court violated his right to a public trial by conducting two conferences with counsel in chambers. He also contends that the court erred by denying his request to instruct the jury on third degree assault of a child. Lastly, Clark argues that the court violated his right to a unanimous jury verdict because the State presented insufficient evidence to prove one of the alternative means of committing the crime submitted to the jury. Because Clark fails to show that the court's discussions with counsel in chambers implicated his public trial rights, the facts did not warrant a third degree assault instruction, and the State presented sufficient evidence to prove all alternatives considered by the jury, we affirm.

## Background

Crystle Strong came home one day to find her four-year-old son, Q.S., injured. Strong's husband, Christopher Clark, said that the boy fell off the bed

and hit his face on a dog bone. Strong insisted that they immediately take Q.S. to the hospital.

The emergency room doctors felt that Q.S.'s injuries were not consistent with Clark's explanation. The hospital staff also received an anonymous phone call expressing concern that Clark may have inflicted Q.S.'s injury.[1] Suspecting child abuse, the treating physician contacted Child Protective Services (CPS). A CPS investigator and a local police officer responded to the hospital to speak with the family. In an interview outside of Clark's presence, Q.S. provided details of how Clark had punished him, demonstrating a closed-fist punch and two hands choking him by the throat.

The State charged Clark with second degree domestic violence assault of a child. The third amended information alleged that Clark intentionally assaulted Q.S.

> and thereby did recklessly inflict substantial bodily harm, and/or knowingly inflicted bodily harm which by design caused such pain or agony as to be equivalent of that produced by torture, and/or intentionally assaulted [Q.S.] by strangulation, and/or caused bodily harm that was greater than transient physical pain or minor temporary marks, the defendant having previously engaged in a pattern or practice of either assaulting the child which resulted in bodily harm that was greater than transient pain or minor temporary [sic], or causing the child physical pain or agony that was equivalent to that produced by torture.

Immediately before trial, the judge met with counsel privately in chambers. The court acknowledged this meeting on the record but provided no details about

---

[1] Officials later determined that one of Strong and Clark's roommates, who was in the house at the time Q.S. was injured, placed this call.

what occurred in chambers. The record before us provides no additional information. At the end of the State's case, the court granted Clark's motion to dismiss one of the charged alternatives.

Clark also asked the court to instruct the jury on the lesser charge of third degree assault of a child. After the judge held another in-chambers meeting with counsel to discuss jury instructions, the court denied Clark's request. The court instructed the jury on several alternative means of committing second degree child assault. It did not instruct the jury that it must be unanimous as to the means to convict. The jury found Clark guilty, and the court sentenced him to a 41-month standard range sentence. Clark appeals.

Analysis

Clark raises three issues on appeal: (1) the court violated his right to a public trial by conducting in-chambers conferences to address unknown pretrial matters and to complete the jury instructions, (2) the court erred by refusing to give Clark's proposed instruction on a lesser degree offense, and (3) the court violated his right to a unanimous jury verdict because the State failed to present sufficient evidence to prove one of the alternative means submitted to the jury.

Whether a trial court denied a defendant the constitutional right to a public trial presents a question of law, which we review de novo.[2] Both the state and federal constitutions provide a criminal defendant the right to a public trial.[3] The

---

[2] State v. Paumier, 176 Wn.2d 29, 34, 288 P.3d 1126 (2012).
[3] State v. Lormor, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011); U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22.

public has a related right to open criminal court proceedings.[4] Thus, a strong presumption exists that courts are to be open at all stages of the trial.[5]

The right to a public trial, however, is not absolute, and a trial court may close the courtroom under certain circumstances.[6] Generally, to determine the propriety of a closure, Washington courts must conduct a Bone-Club analysis[7] and make specific findings on the record to justify the closure.[8] Our Supreme Court has recognized that "not every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public."[9] Therefore, as the first step in determining if a violation of Clark's

---

[4] Lormor, 172 Wn.2d at 91; U.S. CONST. amend. I; WASH. CONST. art. I, § 10.

[5] State v. Sublett, 176 Wn.2d 58, 70, 292 P.3d 715 (2012) (plurality opinion).

[6] State v. Momah, 167 Wn.2d 140, 148, 217 P.3d 321 (2009); State v. Easterling, 157 Wn.2d 167, 174-75, 137 P.3d 825 (2006).

[7] The Bone-Club factors are as follows:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

State v. Bone-Club, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) (alteration in original) (quoting Allied Daily Newspapers of Wash. v. Eikenberry, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

[8] Momah, 167 Wn.2d at 148-49.

[9] Sublett, 176 Wn.2d at 71.

right to a public trial occurred, we must first consider "whether the proceeding at issue implicates the public trial right, thereby constituting a closure at all."[10]

No Washington case law addresses whether the trial court's first chambers conference implicates the defendant's public trial rights. Therefore, we apply the "experience and logic" test adopted in State v. Sublett[11] to determine whether this proceeding must be open to the press and the public. Under this test, "the experience prong . . . asks 'whether the place and process have historically been open to the press and general public,'"[12] while "[t]he logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'"[13] If the answer to both prongs is yes, the right to a public trial attaches, and the trial court must conduct a Bone-Club analysis on the record before closing the proceedings. Clark has the burden of satisfying the experience and logic test.[14]

The record indicates only that the court conducted the first conference before the start of the trial. The conference took place before the State read the amended information, before Clark entered his plea of not guilty, and before the venire panel had been called into the courtroom to begin voir dire. Although Clark's counsel attended, the record does not disclose what, if anything, occurred

---

[10] Sublett, 176 Wn.2d at 71.
[11] 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012) (plurality opinion) (citing Press-Enter. Co. v. Superior Court, 478 U.S. 1, 8-10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)).
[12] Sublett, 176 Wn.2d at 73 (quoting Press, 478 U.S. at 8.
[13] Sublett, 176 Wn.2d at 73 (quoting Press, 478 U.S. at 8.
[14]In re Pers. Restraint of Yates, ___ Wn.2d ___, 296 P.3d 872, 886 (2013).

in chambers. Clark has failed to sustain his burden to satisfy the experience and logic test.

Sublett resolves Clark's challenge to the second chambers conference. In Sublett, the court observed that jury instruction proceedings have not historically happened in an open courtroom.[15] The parties submit proposed instructions to the court several days in advance of trial and counsel often discuss the instructions with the court in informal, off-the-record proceedings.[16] Therefore, the second conference, where the court and counsel discussed jury instructions, fails the experience prong of the Sublett test and does not constitute a closure.

Clark also claims that the court violated his statutory right to a jury instruction on the lesser degree offense of assault of a child in the third degree. A defendant is entitled to an instruction on an inferior degree offense when

> (1) the statutes for both the charged offense and the proposed inferior degree offense "proscribe but one offense"; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense.[17]

We review alleged legal errors in jury instructions de novo.[18] We affirm the trial court's decision that the trial evidence did not support giving the lesser degree offense instruction.

---

[15] Sublett, 176 Wn.2d at 75.
[16] Sublett, 176 Wn.2d at 75-76.
[17] State v. Tamalini, 134 Wn.2d 725, 732, 953 P.2d 450 (1998) (internal citations omitted).
[18] State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

The mens rea required for assault of a child in the second degree is intentionally assaulting or knowingly inflicting bodily harm on the child,[19] while the mens rea required for assault of a child in the third degree is criminal negligence.[20] The court found:

> For there to be a lesser included here, there would have to be an indication of an act done with criminal negligence. There's nothing in the State's evidence in my mind that would suggest that only that occurred.
>
> The clear evidence and all the inferences are that there was an intentional striking. The defendant said nothing happened. Therefore, I conclude that there is no evidence to support the giving of an instruction which would include a criminal negligence aspect to the acts here.

Clark argues that because proof of an intentional act establishes criminal negligence,[21] he was entitled to the lesser degree instruction. We disagree. The court correctly concluded that the record included no evidence that Clark acted with only criminal negligence. State v. Daniels[22] supports this determination. The State charged Daniels with second degree assault for beating his stepson with a VCR power cord and a two-by-four repeatedly over several weeks.[23] The court refused to give Daniels's requested instruction on the lesser degree offense, noting that third degree assault specifically requires that the evidence not rise to the level of a higher degree offense.[24] Thus, to convict for third degree

---

[19] See RCW 9A.36.130, .021.
[20] See RCW 9A.36.140, .031.
[21] RCW 9A.08.010(2).
[22] 56 Wn. App. 646, 651, 784 P.2d 579 (1990).
[23] Daniels, 56 Wn. App. at 648.
[24] Daniels, 56 Wn. App. at 651-52.

assault, there must not be evidence to support a conviction for second degree assault. Here, because the record included no evidence that Clark committed only the lesser offense, the court properly refused to instruct the jury on the lesser degree offense.

Lastly, Clark alleges that the court violated his constitutional right to a unanimous jury verdict because insufficient evidence supported one of the alternative means considered by the jury and the court did not give a unanimity instruction. Criminal defendants have a right to an expressly unanimous jury verdict.[25] When the charged crime can be committed by more than one means, however, unanimity is not required as to the means by which the crime was committed, so long as substantial evidence supports each alternative means.[26] Where the jury is not instructed that it must be unanimous as to the means, the State must present substantial evidence of each of the alternative means it relies upon.[27] "[I]f the evidence is insufficient to present a jury question as to whether the defendant committed the crime by any one of the means submitted to the jury, the conviction will not be affirmed."[28]

Here, the information presented five alternative means by which Clark may have committed the charged offense: (1) recklessly inflicting substantial bodily harm; (2) knowingly inflicting bodily harm which by design causes such

---

[25] WASH. CONST. art. I, § 21; State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994).
[26] State v. Kitchen, 110 Wn.2d 403, 410, 756 P.2d 105 (1988).
[27] Ortega-Martinez, 124 Wn.2d at 707-08.
[28] Ortega-Martinez, 124 Wn.2d at 708.

pain or agony as to be equivalent of that produced by torture; (3) intentional assault by strangulation; (4) caused bodily harm that was greater than transient physical pain or minor temporary marks; having previously engaged in a pattern or practice of either assaulting the child which resulting in bodily harm that was greater than transient pain or minor temporary marks; or (5) causing the child physical pain or agony that was equivalent to that produced by torture.

The court granted Clark's motion to dismiss the fifth alternative. The jury did not receive a special verdict form about which means it used as the basis for its verdict. The court's instructions allowed the jury to consider four alternative means, all of which must be supported by substantial evidence in order to uphold Clark's conviction. Clark challenges only the sufficiency of the evidence to support the fourth alternative means, that he engaged in a pattern or practice of assaulting Q.S. resulting in greater than transient physical pain or minor temporary marks.

When reviewing the sufficiency of evidence, we view the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[29] Here, the State presented testimony that at various times in the past, Clark hit and pinched Q.S. and banged his head against a wall. Q.S.'s mother testified that Clark spanked Q.S. harder than she would, and at least once she saw Q.S. flinch when Clark was around. Q.S. stated that Clark only hit him when Strong

---

[29] State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).

was away and that he didn't like it when his mother left the house. The State acknowledges that it did not prove these assaults left any marks on Q.S., but it contends, nevertheless, that the evidence is sufficient to show that the assaults caused more than transient pain.

These facts are similar to those in State v. Schlichtmann.[30] In Schlichtmann, witnesses testified that the defendant spanked the children with a belt on several occasions, that the children were afraid of the belt, that the spankings hurt the children, and that on at least one occasion, the child began shaking and crying in the car and refused to go into the house when his grandmother brought him home after a visit. The court found that although no evidence indicated that these assaults left bruises or other marks, the facts were sufficient to support a guilty verdict under the pattern or practice alternative.

Considering all of the evidence presented here—that Clark struck Q.S. on at least several occasions, that the assaults caused Q.S. pain, and that Q.S. feared being alone with Clark—and evaluating it in the light most favorable to the State, we conclude that the evidence sufficiently supports the conviction under the challenged alternative means.

## Conclusion

The court's discussions with counsel in chambers, both before trial and about jury instructions, did not implicate Clark's public trial rights. The evidence presented at trial did not support a jury instruction that Clark committed only the

---

[30] 114 Wn. App. 162, 168-70, 58 P.3d 901 (2002).

No. 69899-1-I / 11

lesser degree offense.  And the State presented sufficient evidence to prove that

Clark had a pattern or practice of assault that caused Q.S. more than transient

physical pain.  We affirm.

Leach, C.J.

WE CONCUR:

-11-