FILED
COURT OF APPEALS
DIVISION II

2014 APR 22 AM 8:38

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44115-2-II |
| Respondent, | |
| v. | |
| GORDON EUGENE DICKSON, | Consolidated with |
| Appellant. | |
| STATE OF WASHINGTON, | No. 44118-7-II |
| Respondent, | |
| v. | |
| JUSTIN ALEXANDER DICKSON, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — A jury returned verdicts finding Gordon Dickson and Justin Dickson guilty of second degree assault. Gordon and Justin[1] appeal their convictions, each asserting that (1) there was insufficient evidence in support of their second degree assault convictions, and (2) their trial counsel were ineffective for failing to request lesser included or inferior degree fourth degree assault jury instructions. Justin also asserts that his defense counsel was ineffective for failing to object to Gordon's defense counsel's improper closing argument, which argument Justin contends misstated the burden of proof with regard to self-defense. We affirm.

---

[1] Because Gordon and Justin Dickson share a last name we refer to both by their first names, intending no disrespect.

No. 44115-2-II
Consolidated with No. 44118-7-II

FACTS

In November 2011, Craig Ripley was driving to his friend's house in Tumwater, Washington when a gray Saturn sedan exited a gas station lot and pulled out into the road in front of Ripley's pickup truck. Gordon was the driver of the Saturn. Gordon's son, Justin, was in the passenger seat of the Saturn and Justin's girlfriend was in the backseat. After Gordon exited the gas station and entered the street in front of Ripley's truck, Ripley honked his horn.

According to Ripley, Gordon responded by extending his "middle finger out the driver's door." Report of Proceedings (RP) at 65. Ripley "gave the middle finger back" and Justin gestured to Ripley to pull his truck over. RP at 66. Gordon pulled his vehicle over, and Ripley continued driving. A short time later, Ripley arrived at the front gate entrance to his friend's property and saw Gordon parking the Saturn behind his truck. Ripley and Gordon began arguing with each other while sitting in their respective vehicles. Justin then exited the Saturn, walked toward Ripley, and said, "I'm a black belt. I'm a black belt." RP at 75. Justin started hitting the small window located behind Ripley's driver's side door, and Ripley exited his vehicle. Gordon then exited the Saturn, walked toward Ripley, and stated that he was also a black belt.

Ripley stated that he became frightened and wrote down the Saturn's license plate number as Gordon was approaching. Gordon approached Ripley to the point where he and Ripley were almost nose to nose, and then Gordon began talking close to Ripley's face. Gordon then bumped Ripley "with his belly to the point where [Ripley was] all the way against [his] truck." RP at 80. Justin then hit Ripley in the face several times. Ripley felt that he was "getting knocked out" and started fearing for his life. RP at 80. Ripley stated that Gordon may

2

have been hitting him and may have kicked his right leg, but all he could clearly remember was Justin's punches to his face. As he was being hit, Ripley saw a man driving a bucket loader pull up behind the Saturn and heard the driver tell Gordon and Justin to "knock it off." RP at 83. Gordon told Justin, "I think he has had enough," and Justin stopped punching Ripley. After Justin stopped punching him, Ripley noticed that his face had swollen, his eyes had swollen shut, he had chipped teeth, and his right leg hurt. As Gordon was driving away, Ripley called 911. Ripley then picked up his children from daycare, drove home, cleaned himself up, took some aspirin, and went to sleep.

When he woke the following morning, Ripley could not put any weight on his right leg, and he saw that his right knee had swollen. That same day, Ripley went to a clinic and was informed that his kneecap was fractured. A few days later, Ripley saw an orthopedic surgeon, Dr. Peter Wood. Wood performed surgery on Ripley's knee the next day. After the surgery, Ripley was unable to engage in any physical activity for a month apart from leaving his bed to use the bathroom. On January 6, 2012, the State charged Gordon and Justin with second degree assault, alleging that each acted as a principal or as an accomplice in the assault.

At Gordon's and Justin's consolidated trial, Ripley testified consistently with the facts above. Ripley also testified that he did not have any injury to his knee prior to the assault. Ripley's wife, Valarie Ripley, testified that Ripley did not have any apparent injury when she had last seen him before the assault. Valarie also testified that when Ripley came home after the assault, he told her what had happened, cleaned himself up, took some aspirin, and went to bed.

Michael McNulty testified that he was driving a bucket loader for a landscape retail company on November 10, 2011, when he saw three men arguing. McNulty then saw two of the men hitting the third man while the third man was pinned against a truck. McNulty stated that he drove his bucket loader towards the men and that the two men continued to hit the third man until he arrived approximately 20 seconds later and told them to stop.

Dr. Wood testified that, based on Ripley's age and bone quality, it was likely that a "severe impact" caused his kneecap fracture. RP at 223. Wood stated that the impact required to fracture Ripley's kneecap was "analogous to a 40[ to] 60-miles-per-hour head-on collision." RP at 223. Wood also stated that a single, hard kick to the knee could have caused Ripley's injury.

Justin testified that after Gordon pulled into traffic from the gas station, Ripley sped up behind them and honked his horn. Justin further testified that Ripley was upset, yelling, and that Ripley gestured to Gordon to pull his car over. Justin said that after Gordon parked his car behind Ripley's truck, Gordon and Ripley began arguing. Justin stated that he exited the Saturn and asked Ripley, "[W]hy do you disrespect my dad like that?" RP at 365. According to Justin, Ripley then started insulting him and then Gordon exited the Saturn. Justin testified that Ripley exited his truck and began shouting at Gordon for a few seconds before grabbing Gordon's throat. Justin stated that he shoved Ripley, and then Ripley grabbed Justin's throat. Justin admitted that he hit Ripley five or six times in the face, but claimed that he had acted in self-defense. When confronted with photographs of Ripley's injuries, Justin admitted that he caused Ripley's facial injuries. Justin testified that Gordon did not participate in the fight.

Gordon also testified that Justin had acted in self-defense, stating that Justin began punching Ripley only after Ripley had first assaulted them. Additionally, Gordon testified about his numerous medical conditions. Gordon stated that he has herniated disks in his lower back that restrict his "ability to get aggressive in any way," has tears in both his shoulders that restrict his mobility, has had knee replacement surgery on his right knee, and has deterioration in his left knee. RP at 418. Gordon also stated that he has to wear a colostomy bag because he had a large portion of his digestive system removed as a result of his Crohn's disease.

The jury returned verdicts finding Gordon and Justin guilty of second degree assault. Gordon and Justin timely appeal their convictions.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Gordon and Justin both assert that sufficient evidence did not support their second degree assault convictions. Specifically, they argue that the State failed to prove that either caused Ripley "substantial bodily harm," as required in a conviction for second degree assault, because there was no evidence that they fractured Ripley's kneecap. We disagree.

Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial and direct evidence are equally reliable. *State v.*

5

*Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

To convict Gordon of second degree assault as charged here, the State had to prove beyond a reasonable doubt that he

> (1) intentionally assaulted Ripley and
> (2) thereby recklessly inflicted substantial bodily harm

RCW 9A.36.021(1)(a);

> or that

> (1) with knowledge that it would promote or facilitate a second degree assault, (2) he either (a) solicited, commanded, encouraged, or requested Justin to commit second degree assault or (b) aided or agreed to aid Justin in planning or committing second degree assault.

RCW 9A.08.020(3)(a). Similarly, to convict Justin of second degree assault as charged, the State had to prove beyond a reasonable doubt that he

> (1) intentionally assaulted Ripley and
> (2) thereby recklessly inflicted substantial bodily harm

RCW 9A.36.021(1)(a);

> or that

> (1) with knowledge that it would promote or facilitate a second degree assault, (2) he either (a) solicited, commanded, encouraged, or requested Gordon to commit second degree assault or (b) aided or agreed to aid Justin in planning or committing second degree assault.

RCW 9A.08.020(3)(a).

RCW 9A.04.110(4)(b) defines "substantial bodily harm" as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." Gordon and Justin challenge only the sufficiency of evidence in support of a jury finding that either inflicted substantial bodily harm on Ripley.

As an initial matter, Gordon and Justin's sufficiency argument relies on their contention that the jury could consider only Ripley's fractured kneecap, and not his other injuries, in finding that their assault on Ripley caused him substantial bodily harm. This is incorrect. In support of this contention, Justin quotes from our opinion in *State v. Beasley*, in which we stated:

> When the State presents evidence of several *acts* that could form the basis of one charged count, the State must either tell the jury which *act* to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act. The failure to follow one of the above options violates the defendant's State constitutional right to a unanimous jury verdict and his United States constitutional right to a jury trial.

126 Wn. App. 670, 682, 109 P.3d 849 (2005) (emphasis added) (citation omitted). This is commonly referred to as the *Petrich* rule.[2] But the *Petrich* rule does not apply here because this is not a multiple acts case for which the State had to elect a single act for the jury's consideration, or for which the trial court had to provide a unanimity instruction. *See, e.g., State v. Crane*, 116 Wn.2d 315, 325, 804 P.2d 10 (1991) ("The *Petrich* rule applies only to multiple acts cases (those cases where several acts are alleged, any one of which could constitute the

---

[2] *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 405-406, 756 P.2d 105 (1988).

crime charged)"). Rather, the State here alleged a single, continuous act of assault that resulted in Ripley's multiple injuries. *Crane*, 116 Wn.2d at 326. Accordingly, the jury could consider any of the injuries Ripley sustained as a result of the defendants' assault in determining that the defendants inflicted substantial bodily harm.

Here, the State presented evidence that, as a result of Justin's punches to his face, Ripley's face and eyes swelled and three of his teeth chipped. This is sufficient evidence to support the jury finding that the assault caused Ripley substantial bodily harm. *See State v. McKague*, 172 Wn.2d 802, 806, 262 P.3d 1225 (2011) (evidence of victim's facial bruising and lacerations sufficient to show substantial bodily injury); *State v. R.H.S.*, 94 Wn. App. 844, 847, 974 P.2d 1253 (1999) (broken teeth constitute substantial bodily harm).

Additionally, the State presented sufficient circumstantial evidence to support a finding that defendants fractured Ripley's kneecap. The State presented evidence that Ripley did not have any injury to his knee prior to the assault and that his right leg began to hurt immediately following the assault. The State also presented evidence that, after the assault, Ripley picked up his children from daycare, went home, cleaned himself off and went to bed. When Ripley woke the morning following the assault, his knee was swollen and he could not put any weight on it, and he was told that his kneecap was fractured. Ripley's orthopedic surgeon, Dr. Wood, testified that a single, hard kick to the knee could have caused Ripley's injury. Based on this evidence, the jury could reasonably infer that Ripley's kneecap was fractured as a result of the assault. Accordingly, we hold that sufficient evidence supported Gordon and Justin's second degree assault conviction.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

A.    *Fourth Degree Assault Instruction*

Next, Gordon and Justin both assert that their respective defense counsel provided ineffective assistance by failing to request jury instructions on the lesser included or inferior degree offense of fourth degree assault.[3] Again, we disagree.

We review ineffective assistance of counsel claims de novo. *State v. Binh Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005). To prevail on an ineffective assistance of counsel claim, a defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). If a defendant fails to establish either prong of this test, our inquiry ends and we need not consider the other prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). "Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012) (citing *State v. Johnston*, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007)), *review denied*, 176 Wn.2d 1023 (2013).

---

[3] Gordon asserts that his defense counsel was ineffective for failing to request a *lesser included* offense jury instruction and Justin asserts that his defense counsel was ineffective for failing to request either a *lesser included* or an *inferior degree* offense jury instruction.

A defendant is entitled to a lesser included offense jury instruction if (1) each element of the lesser offense is a necessary element of the charged offense, and (2) the evidence supports an inference that only the lesser crime was committed. *State v. Nguyen*, 165 Wn.2d 428, 434, 197 P.3d 673 (2008). And a defendant is entitled to an inferior degree offense jury instruction when:

> "(1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."

*State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997) (quoting *State v. Foster*, 91 Wn.2d 466, 472, 589 P.2d 789 (1979) and *State v. Daniels*, 56 Wn. App. 646, 651, 784 P.2d 579 (1990)). "[T]he test for determining if a party is entitled to an instruction on an inferior degree offense differs from the test for entitlement to an instruction on a lesser included offense only with respect to the legal component of the test." *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000). However, the factual components of both lesser included offense test and the inferior degree test are the same; to be entitled to either a lesser included or inferior degree offense jury instruction, the evidence must support an inference that the defendant committed only the lesser included or inferior degree offense. *Fernandez-Medina*, 141 Wn.2d at 445-46. Because the evidence at trial did not support an inference that the defendants committed only fourth degree assault, they were not entitled to a fourth degree assault instructions and, thus, counsel were not ineffective for failing to request such instructions.

A person is guilty of fourth degree assault if, under circumstances not amounting to first, second, or third degree assault, he or she assaults another. RCW 9A.36.041(1). Here, the

10

uncontroverted evidence at trial showed that Justin hit Ripley in the face several times and that, as a result of Justin hitting Ripley, Ripley's face and eyes became swollen and three of his teeth chipped. In claiming self-defense, Justin admitted that he punched Ripley in the face several times and, when confronted with photographs of Ripley's injuries, admitted that Ripley's facial injuries were a result of those punches. As discussed above, Ripley's facial injuries constituted substantial bodily harm as defined under RCW 9A.04.110(4)(b). Accordingly, the evidence at trial did not allow the jury to infer that the defendants committed an assault that did not result in substantial bodily injury and, thus, the defendants were not entitled to fourth degree assault jury instructions. We hold that Gordon and Justin have not shown ineffective assistance for their counsels' failure to request fourth degree assault jury instructions.

B.       *Closing Argument*

Finally, Justin asserts that his counsel was ineffective for failing to object to Gordon's counsel's closing argument, which Justin contends misstated the burden of proving self-defense. We disagree.

During closing argument, Gordon's defense counsel stated the following:

> Now, what we say is self-defense goes to the assault, not to what happens afterwards. So if the self-defense, if you find self-defense, and you don't have to find that beyond a reasonable doubt, because we are the ones putting self-defense in front of you. There is actually not a standard there, but if you find self-defense, okay, then the State's [sic] has to disprove self-defense beyond a reasonable doubt. You can't have a doubt for which a reason exists for their use of self-defense. So it puts a big burden on the State, the "no duty to retreat" puts a big burden on the State where it should be. Okay?

11

The only issue that you guys have in front of you is who started the fight, because it happened so quickly, and it was only fists being used.

. . . .

So before you get to the "to convict" jury instruction, I think it might be wise to first talk about whether or not an assault actually happened, because an assault is an unlawful, unpermitted touching. So if Phil tells me, hey, don't touch me man, and I go like this, okay, then I committed the crime of assault in the fourth degree, because I touched him after he told me, don't do it, man.

Now, if I touch Justin, he doesn't say anything to me, and I just kind of touch him, it's kind of expected that you touch people sometimes, well, then that's not an unconsented-to touching. It's kind of expected you can kind of do that.

So that's what an assault is. It's not just a striking. It includes a striking. It even includes the attempted strike, but self-defense negates the assault. Self-defense says that the use of force was lawful. So before you get to the "to convict," I think you should talk about whether or not self-defense applies to this case. If self-defense applies to this case, then you have to be satisfied beyond a reasonable doubt that it didn't exist, and that's a huge burden to put on the State.

RP at 554-55, 564-65. Justin asserts that this argument misstated the burden with regard to proving self-defense because "[t]he jury does not have to make a finding that self-defense applies before they determine if the State has disproved self-defense beyond a reasonable doubt." Br. of Appellant (Justin) at 21.

Looking at Gordon's defense counsel's argument in context, it appears that defense counsel was asserting to the jury that it need not consider the defendants' self-defense claims if it found that no assault had occurred. And, to the extent that defense counsel's argument suggested to the jury to determine whether self-defense applied before turning to the State's burden of disproving self-defense, we cannot conclude that such a misstatement materially affected the trial. *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980) (An error is harmless "unless, within reasonable probabilities, had the error not occurred, the outcome of the trial

12

No. 44115-2-II
Consolidated with No. 44118-7-II

would have been materially affected."). Here Gordon's defense counsel clearly stated that the State bore the burden of disproving self-defense beyond a reasonable doubt. And the trial court's self-defense jury instruction, which we presume the jury followed, also correctly stated that the State had "the burden of proving beyond a reasonable doubt that the force used by the defendant[s] was not lawful." Suppl. CP at 45; *State v. Costello*, 59 Wn.2d 325, 332, 367 P.2d 816 (1962).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Melnick, J.

13